## ARMOUR & COMPANY *v.* ROSS & BARFIELD.

1. When a petition alleging the breach of a contract does not definitely state whether the contract was in writing or not, but simply describes it by setting forth a "memorandum of agreement made and entered into" between the plaintiff and the defendant, such petition is amendable so as to make it declare that the contract was oral, that its terms were the same as those embraced in a written contract between the defendant and another party, and that those terms appear in the memorandum set forth in the petition. An amendment of this character is germane, and does not set forth a new cause of action.

:2. Such a petition is further amendable by adding thereto a statement of particulars, showing the precise facts and conditions under which the alleged breach of contract occurred.

.3. Where in the trial of such an action the plaintiff's contention was that the alleged breach of contract caused deterioration in the value of perishable property, with resulting loss, it was competent for him to testify in his own behalf that he had been·offered a specified price for the property before it was damaged, and also to state the net amount he had received from a sale thereof in market by a factor after the damage. This evidence was admissible without producing the account of sales, or proving by the factor himself the price he received; especially so when the plaintiff further testified that the amount remitted to him was ·the fair value of the property in its damaged condition. Though the contract in question was one to furnish cars for the shipment of fruit, the fact that the offer received by the plaintiff for the fruit was made shortly before it was ready for shipment did not render the testimony as to, the offer inadmissible.

.4. Evidence of such an offer was not inadmissible merely because it was made orally, and because it related to a matter which, under the statute of frauds, required a writing to constitute a binding contract.

.5. This court can not consider an objection to the admissibility of an answer to a question propounded to a witness, when it does not appear from the motion for new trial what the answer to the question was.

·6. Where it is a material question at issue whether the relation of principal and agent existed between two persons, the alleged agent is a competent witness to testify to facts showing the existence of the agency. Receiving his testimony for this purpose would not be proving agency by the hearsay declarations of the alleged agent, but by his sworn testimony as a witness.

·7. If one who has two entirely distinct demands against another accepts payment of one and gives a receipt therefor, there being at the time no mention of the other or any attempt whatever to settle or adjust it, a mere recital in the receipt that it is "in full payment of all claims to date of whatsoever nature" is without consideration so far as relates to the unsettled demand, and does not estop the per-

son signing the receipt from afterwards asserting that demand, nor render it incumbent upon him before so doing to refund the money received upon the claim as to which there was no dispute.

8. There was sufficient evidence on the trial of the present case to warrant a finding that the agent of the defendant, with whom the plaintiff dealt in making the contract declared upon, was a general agent of the former; and accordingly the charges complained of, to the effect that private instructions or limitations not known to persons dealing with a general agent can not affect them, were appropriate.

9. There is no merit in the numerous grounds of the motion for a new trial excepting to other portions of the charge. The same, as a whole, fully and fairly covered the issues between the parties, and was authorized by the evidence introduced on the trial.There was sufficient evidence to support the verdict.

Argued March 8,—Decided April 6, 1900.

Action on contract. Before Judge Nottingham. City court of Macon. August 8, 1899.

*Dessau, Harris & Birch, Pope S. Hill,* and *Roland Ellis,* for plaintiffs in error. *Steed & Ryals,* contra.

LEWIS,. J.    Ross & Barfield brought an action by attachment against Armour & Co., of Chicago, Ill., for the recovery of damages resulting from the alleged breach of contract by the defendants, which contract was set forth in the petition in the following language:

"Memorandum of agreement made and entered into this 28th day of June, A. D. 1898, between Armour & Co., of the City of Chicago, County of Cook, State of Illinois, party of the first part, and Ross & Barfield, of the County and State aforesaid [Bibb County, Georgia], party of the second part, witnesseth: The party of the second part hereby agrees to use exclusively the Fruit Growers Express refrigerator cars owned by the party of the first part on Central of Georgia Railroad in the State and County first aforesaid, for the shipment under refrigeration of all fruit in car-load lots owned, bought, or controlled in any manner whatsoever by the party of the second part during the present fruit-shipping season of the year A. D. 1898, and to pay to the party of the first part their tariff charges, as filed with the agent of the railroad at their shipping station, for such service, less the sum of five dollars per car rebate, which the party of the first part hereby agrees to pay the party of the second part in

consideration of the party of the second part giving the party of the first part their entire shipments as above, it being understood by the party of the second part that the refrigeration charges on all such shipments shall be collected from the consignee of such shipments in the sums as specified by the tariff of the party of the first part, and rebates as above specified are to be paid by the party of the first part to the party of the second part at the close of the present fruit-shipping season aforesaid; all of which is fully understood and agreed to by the parties hereunto. It is further understood and agreed by the parties hereto that the party of the first part shall supply all the refrigerator cars required by the party of the second part, and that they shall be good, clean cars, and shall guarantee to properly ice them before loading and during transit. The party of the second part agrees to give the party of the first part not less than twenty-four hours notice when cars are required for loading. It is further understood and agreed that the party of the first part shall not be held responsible for failure to furnish cars to party of the second part, when such failure is caused by acts of war or results thereof. In witness whereof the parties have this day set their hands and seals." (No signature.)

The petition alleged, in substance, that on the 19th, 20th, 21st, and 22d of July, 1898, the principal part of the peach crop of petitioners, covered by above contract, ripened, and that Armour & Co., in accordance with the terms of the contract, were notified twenty-four hours ahead of the cars that petitioners required each day to ship their peaches, and on each of said dates failed to furnish the requisite cars requested by plaintiffs. On July 19 two cars were required, and none furnished; on July 20 three cars were required, and only one furnished; on July 22 four cars were required, and only two were furnished; and of the two cars required and furnished on July 23 one of them was not the kind called for by the contract, but was a dirty meat car, totally unfit for the shipment of fruit, and was only used by petitioners in preference to letting the fruit, that was loaded in it, decay and become a total loss. On July 19 and 20, petitioners, relying on defendants to comply with their contract, had picked, packed, and crated in and around their packing-house, ready to

be loaded into the refrigerator cars requested of defendants, the peaches to fill the cars so requested, but, by reason of defendants. failing to furnish said cars as contracted by them, said peaches were from 24 to 48 hours old before they could be loaded into refrigerators cars and shipped, became overripe for shipment and soft, and greatly deteriorated in value. For the purpose of keeping down their damages to the smallest sum, petitioners did not throw the peaches out to decay and become a total loss, which fruit was picked, packed, and ready to be loaded on the cars on July 19 and 20, but as soon as defendants furnished cars petitioners loaded the peaches into them, and shipped them to different markets where they were informed and believed they would bring the best prices in their damaged condition. All these facts were known to defendants, whose agents went into petitioners' packing-house daily from July 18 to 23. The petition set forth an itemized statement of the number of cases of peaches thus damaged by the delay in their transportation, and the amount of damage upon each of the several cases named, which amount aggregated the sum of $550.01. The petition further sets forth the offer that plaintiffs had received for the above-mentioned fruit in first-class shipping condition, f. o. b. at their packing-house, but alleged that, by reason of defendants' failure to furnish cars as above mentioned, they could not furnish the peaches in prime condition for shipment, and hence were forced to ship the fruit to commission men in distant markets to be sold for what they would bring, and they could not sell the peaches to their local market; by virtue of which fact petitioners claimed to have been damaged in the sum stated.

This attachment was sued out on November 15, 1898, against defendants, on the ground of non-residence, for the sum above stated, returnable to the December term, 1898, of the city court of Macon, and was levied upon certain property of Armour & Co., and a summons of garnishment issued on the Central of Georgia Railway on November 16, 1898. The garnishment was dissolved, and the property levied upon was replevied by the defendants. Petitioners prayed for a general judgment against the defendants for the sum of $550.01.

To this petition defendants filed a plea denying in general

terms the allegations in each of plaintiffs' paragraphs. This plea was subsequently amended by the defendants, in effect alleging that they had paid to plaintiffs the sum of $80.00 in full payment and satisfaction of any claim for damages arising out of the shipment in question; that this sum was paid by defendants to plaintiffs in full and final satisfaction of all claims up to date of whatever nature, as stated in a certain receipt signed by plaintiffs.

Pending the trial of the case plaintiffs offered two amendments to their declaration. These were allowed by the court over the objection of defendants' counsel. The contents of the amendments so offered and allowed, and the grounds of objection thereto, are hereinafter fully set forth. The case proceeded to trial, and resulted in a verdict in favor of the plaintiffs for the sum of $550.01, the amount claimed. The defendants filed a motion for a new trial, and except to the judgment of the court below overruling this motion. There were numerous grounds in the motion for a new trial, the general ones, exceptions to the allowance of the amendments to the petition above stated, exceptions to the admission of certain testimony, and to various charges of the court. We will now proceed to discuss such of them as we deem essential to a proper adjudication of the present case.

1. During the introduction of testimony for the plaintiffs below on the trial of the case, the following facts were developed touching the contract set forth in the original petition. Ross, of the firm of Ross & Barfield, petitioners, was likewise a member of the firm of Ross & Kellar. The latter firm had a written contract with Armour & Co., and Ross, representing the firm of Ross & Barfield, applied to the agent of Armour & Co. for a written contract embracing the same terms and stipulations as those employed in the contract made with Ross & Kellar. The agent replied, in substance, that he was out of blanks for such contracts, but that it made no difference; that Ross & Barfield could go ahead under the same terms and conditions prescribed in the contract with Ross & Kellar, and thereupon this contract was orally adopted between plaintiffs and defendants, and accordingly acted upon by both parties in the shipment of peti-

tioners' fruit. Petitioners moved to amend their declaration by inserting after the word "petitioners" in the first line of the first paragraph, the following words: "orally adopted as the contract between petitioners and Armour & Co., under which petitioners were to ship, and did ship, their peaches during the season of 1898, the following contract:" then followed the contract hereinbefore set out, as embodied in the original petition, which was simply amended by inserting the word "Kellar" in lieu of the word "Barfield," and showing the contract was made for Armour & Co. by Thos. E. King, agent; and also inserting the words "Ross & Kellar" in lieu of the words "Ross & Barfield." An amendment was further added, that this contract was acted upon by Armour & Co. and petitioners in shipping the latter's peaches during the season of 1898. Comparing the amendment offered with the original petition, it will be readily seen that the only effect of the amendment was to show that the contract made between the parties to this suit was a verbal agreement entered into between petitioners and the agent of defendants, by which were adopted all the terms and stipulations of the written contract that had been made for the same season between the defendants and Ross & Kellar. None of the terms, conditions, or stipulations as set forth in the contract embodied in the original petition were in any wise changed by the amendment. When this amendment was offered, objection was made thereto by counsel for plaintiffs in error, on the ground that it introduced a new and distinct cause of action, and also introduced another and different contract into the case from the one sued upon. This objection was overruled by the court, and this ruling constitutes one ground of exception in the motion for a new trial. It was insisted in the argument of counsel for plaintiffs in error, that the cause of action, as set forth in the original petition, was a claim for damages on account of a written contract between the parties, and that the amendment tendered converted that into an oral contract, and hence presented a new and distinct cause of action; but the petition nowhere declares whether the stipulations it sets forth as the contract between the parties were entered into by them either verbally or in writing. It does not set forth that its terms were reduced

to writing and signed by the parties; and while it does set forth in detail the agreement relied upon for a recovery, and in such a form as to suggest the idea it was perhaps reduced to writing, yet there is nothing in the petition to indicate that either party ever signed such agreement. The amendment simply declares how this contract was entered into between the parties, and that while it was an oral agreement, it was never reduced to writing; yet this verbal agreement adopted the terms of a written contract made between the defendants and another firm, the terms of which written contract were perfectly familiar to the parties in this case. The effect of the amendment, therefore, was to show that the obligations the parties had assumed were identical with those set forth in the original petition. No new cause of action and no new parties were presented by such an amendment; and it was simply made so that the allegations would conform exactly to the proof as to the method by which the contract was made, whether orally or in writing. We do not think that the amendment in this case was material or absolutely necessary; for the original petition, to our minds, really set forth the exact contract which the testimony relied upon by plaintiffs had a tendency to establish. Even if it contained any misdescription of the contract that was entered into, or made any change in any particular matter to be performed, yet the identity and substance of the matter upon which plaintiffs rely for a recovery in their action are preserved, and such amendments are not obnoxious to any rule of law. 1 Enc. Pl. & Pr. 558-9; *Georgia R. R.* v. *Smith,* 83 *Ga.* 627 (4); *Verdery* v. *Barrett,* 89 *Ga.* 349, where it was decided that an amendment to an original petition setting forth that the contract referred to therein was in writing, a copy of which was attached as an exhibit to the amendment, did not introduce a new cause of action, but only described more completely the cause of action declared upon. See also *Merritt* v. *Bagwell,* 70 *Ga.* 578; *Western Union Tel. Co.* v. *Shotter,* 71 *Ga.* 760 (2), 766 (2).

2. It appears from the testimony in the record that Ross & Kellar were likewise shipping peaches at the same time as defendants in error, and that the peaches of these two firms were stored in the same packing-house. It seems that Ross would

give orders for cars for both firms. On the trial of the case petitioners, by their counsel, offered a second amendment to their declaration, by adding the following words: "said requirements of cars being made for the use of petitioners and for the use of Messrs. Ross & Kellar, who were likewise shipping peaches at the same time as petitioners, from the same packing-house, and the said requirements of cars including the number of cars required both by petitioners and by Ross & Kellar, and to be used by them respectively, as their respective need for cars demanded; and this was known and understood by the said Armour & Co. at the time." This amendment was allowed by the court over objection of counsel for plaintiffs in error on the ground that there was no clause in the contract between the parties to this suit which permitted the plaintiffs below to share with any other person in the use of cars ordered under the contract; and upon the further ground that the amendment introduced a new and distinct cause of action, and sought to vary the contract upon which the plaintiffs below claimed damages. We must confess that we can not see the force of this objection. Both of these firms had contracts with defendants to furnish the cars which each required for the shipment of their fruit. The amendment adds no new cause of action whatever, but is simply a statement of particulars amplifying the allegations of the petition by showing the precise facts and conditions under which the alleged breach of the contract sued upon occurred. 1 Enc. Pl. & Pr. 556; *Hayden* v. *Burney,* 89 *Ga.* 715; *Augusta Co.* v. *Andrews,* 92 *Ga.* 706 (3). This amendment offered simply set forth details and circumstances of the particular transaction which, under the Civil Code, § 5098, may be amplified or varied by amendment.

In the light of the evidence there is nothing in the contention of counsel for plaintiffs in error that this last amendment to the petition should not be allowed, because there was nothing in the contract between the parties which permitted plaintiffs below to share with any other person in the use of cars ordered under the contract. The evidence shows that plaintiffs in error had a subagent at this station, who daily frequented the packing-house where the fruit of both Ross & Barfield and Ross & Kellar was

stored, and that he knew the number of cars each firm required, as orders were sent through him to the general agent for these cars. The general agent in his testimony admitted that he knew both these firms were using the cars furnished, and contended that he did what he could to supply them with cars ordered. The evidence further shows that there was a fair and proper division of the cars furnished between these two firms, the subagent, who was also agent of the railroad company at that station, aiding in looking after a proper loading of the cars for both firms. Even if there had been any power in Ross to take all the cars the firm of Ross & Barfield needed, and thus deprive Ross & Kellar, it could have been of no profit to plaintiffs in error, for Ross & Kellar, under their written contract which was undisputed, could unquestionably have recovered damages for any loss thereby sustained.

3. The contention of the plaintiffs below was that the defendants were guilty of a breach of their contract in not promptly furnishing the number of cars needed for the transportation of fruit that was ready for shipment, especially from the 19th to 23d of July, 1898. The testimony introduced in behalf of the plaintiffs below tended to show that a quantity of peaches, on account of getting overripe, had greatly deteriorated in value before the shippers were supplied with cars sufficient for their transportation. The dates mentioned embraced a season when the peach crop was ripening most rapidly. About this time, as a quantity of the peaches were ready to be gathered and shipped, an offer was made to the plaintiffs by the agent of a New York firm dealing in such produce, guaranteeing a certain price for the peaches to be shipped on the dates mentioned, to wit, between the 19th and 23d of July, 1898, inclusive. Plaintiffs got their peaches packed and in readiness for shipment, in accordance with the terms of their contract with this agent of the New York firm, but in consequence of failing to get in time the requested number of cars that had been ordered, the peaches deteriorated in value, and the agent then refused to accept the same. The testimony of plaintiffs further tended to show that, as soon as they procured cars, they shipped the fruit to reputable dealers in northern markets, where they were

sold; and testimony was allowed showing the net returns which plaintiffs received from such sales. In several grounds of the motion for a new trial objection is made to the introduction of proof as to what the plaintiffs had received for the various cases of this damaged fruit, the objection being mainly upon the ground that it was not competent for the witness to state from what source the money came, or what it was for, but that the proper way to prove the source was by the person who sent it. We think the testimony was clearly admissible; especially in view of the fact that the witness, who was Ross, one of the plaintiffs, testified that the amount remitted to his firm was a fair valuation of the fruit in its damaged condition. This witness further testified that he had been engaged in the business of selling this fruit in the markets of the country for a number of years, and the evidence tended to show that he occupied the position of being an expert as to the market value of such products. It was further objected that this same witness was allowed to testify that he was offered for the fruit, before it was picked and put in the packing-house, 75 cents per case. This testimony was objected to upon the ground that the value of the fruit before it was picked and put in the packing-house was not properly to be considered by the jury. The judge below, in his note to this ground of the motion, says: "The purport of this evidence, as shown by the testimony in the case, was that the offer, while made prior to the picking of fruit, was made for fruit to be picked, packed, and delivered at shipping-point ready for shipment." In the light, then, of this additional evidence, it appears that the offer made for the peaches was the price agreed to be paid after they were picked, packed, and ready for shipment, and certainly was a circumstance tending to show their market value. Especially is this true in view of the testimony of this agent to the effect that the price offered for the peaches at the place of shipment was sufficiently low to allow his principal profit on a sale thereof at their market value in New York. It is a well-recognized principle of law that, in proving the market value of any article of produce in a business sense, it is entirely permissible to resort to the opinions of persons familiar with the market, and, as these opinions are made up in a

measure of what is said by others, hearsay is primary evidence of value. 1 Whart. Ev. §§ 255-449; *Central R. R.* v. *Skellie*, 86 *Ga.* 686, and the opinion of Justice Simmons (now Chief Justice) on pp. 692-3, in which he thoroughly and lucidly discusses this question of proof of values. In the present case there was sufficient testimony to show that the witnesses who swore to the value of this fruit were experts and dealers in the articles in question. When a witness is a dealer in such things and has had special opportunity for forming a correct opinion, his testimony is admissible as expert testimony. This principle is announced by Justice Simmons in his opinion in the case above cited.

4. Objection was further made to the admission of the testimony of a certain witness to the effect that he, as agent of a New York firm, had authority to bind his principals by the contract he made with petitioners with reference to the purchase of the fruit in question. The ground of this objection was, that the agent could not bind his principals by any guarantee unless the same was in writing, as the value of the fruit was over $50.00. It is claimed that this contract was void under the statute of frauds as embodied in the Civil Code, § 2693, par 7, but by reference to that provision in the code it will be seen that it is necessary for such a promise to be in writing only for the purpose of making the obligation binding on the promisor. The promisor can avail himself in such a case of a plea that, the statute of frauds requiring the contract to be in writing, the courts can not enforce a mere oral agreement on the subject. The promisor on the other hand can waive this right, which was evidently intended merely as a personal privilege to him. These views, we think, are sustained by a decided weight of authority. 1 Benj. Sales, 111, note; Browne on Statute of Frauds, § 115 a; Clark on Contracts, 146; 8 Am. & Eng. Enc. L. (1st ed.) 658. Besides this, it appears from the testimony that the shippers of this fruit had complied with the oral agreement made with the agent of the New York firm to the extent of packing and gathering their fruit, and putting it in a proper condition for shipment, and, under the evidence introduced in behalf of plaintiffs, had the defendants furnished the cars in accordance with their contract, the goods, in pursuance of the verbal agree-

ment of purchase, would have been shipped by the owners to the New York firm. This would have been a complete performance on the part of the shippers of their obligations under the contract, and, in itself, would have taken it out of the operation of the statute of frauds. It would have fallen within the exception provided for in the Civil Code, § 2694.

5. Another ground in the motion for a new trial is, that the court erred in admitting in evidence in behalf of plaintiffs testimony as to what reputation, as dealers in fruit, the New York firm had, with whose agent plaintiffs had made a contract for the sale of the fruit in question. The motion fails to set forth the testimony that was admitted over this objection; and, even if its admission was improper, the motion does not indicate that any harm whatever resulted to the complaining party. Under repeated rulings of this court, it can not consider any ground in a motion for a new trial complaining of errors in admitting or rejecting testimony, when the motion fails to set forth what was the particular testimony thus admitted or rejected. *Huie* v. *McDaniel,* 105 *Ga.* 319; *Pearson* v. *Brown,* 105 *Ga.* 802; *Stovall* v. *State,* 106 *Ga.* 443 (2).

6. In proof by plaintiffs below of their alleged contract made for the sale of their goods with the New York firm, the court admitted in evidence, over the objection of counsel for defendants, the testimony of that agent to the effect that he was agent of this New York firm, and as such had the power, and was charged with the duty, of making contracts for the purchase of fruits like the one he had made with plaintiffs. This testimony was objected to upon the ground that the statement of this agent that he had authority to bind the New York firm was hearsay and illegal, and was not binding on his alleged principal. There can be no question about the rule of law that the agency of one can not be established by the mere declaration of an alleged agent. The reason for this rule is that such testimony is hearsay, not delivered on oath, and without any opportunity of cross-examination. But there is nothing in the law that renders the alleged agent himself an incompetent witness to testify on the trial of the case to any fact showing what the relation is between him and his alleged principal. He is just as competent

a witness on the subject as the principal himself would be, and, in the event of a conflict between the two as to whether the relation of agency existed between them, it would at least be for the jury to determine who was worthy of credit. "Where the authority was verbally conferred, the agent himself is a competent witness to prove it." 2 Gr. Ev. § 63. In the present case there was no pretence that the agent was acting under any written authority.

7. The vital question in this case is, whether or not such a contract was made between the parties litigant as set forth in plaintiffs' petition and amendments thereto. The testimony of plaintiffs tends to show that exactly such a contract was made. Upon this point there was an issue of fact between Ross, a member of plaintiffs' firm, and King, the agent of the defendants. Ross testified positively that he approached King for the purpose of making with defendants a written contract for the furnishing of refrigerator cars with the identical stipulations as were contained in the contract made between Ross & Kellar and defendants. He swore positively that the agent told him that for want of blanks he could not furnish the written contract, that it was unnecessary; and they, by verbal agreement, adopted the stipulations in the written contract made with Ross & Kellar. King denied this in his testimony. He admitted that Ross asked him for such a contract, but testified that he told him he was without blanks and could not furnish it. He denied, however, making any parol agreement to abide by the stipulations set forth in the written contract mentioned. This issue was fairly submitted to the jury under the charge of the court, and, by their verdict finding for the plaintiffs, they necessarily found that such a contract as was insisted on by plaintiffs was entered into by the parties, and that there had been a breach of the same, as alleged in the petition, resulting in damage to the plaintiffs as claimed. If, therefore, a contract was made, as contended for by plaintiffs, then the defendants, by virtue of its terms, obligated themselves to pay back to plaintiffs the sum of $5.00 per car rebate, in consideration of plaintiffs giving them their entire shipments. There is no question in this record that the plaintiffs complied with this obligation, by fur-

nishing their entire shipments to defendants; and it necessarily follows that the rebates mentioned became due at the close of the fruit-shipping season. This demand, then, for a rebate was entirely separate and distinct from the claim for damages set forth in this case. If the contract was made as alleged by plaintiffs, and as found by the jury, then there could have been no question about the rebate being due. The defendants, by amendment to their plea, insisted that the payment of this rebate amounted to an accord and satisfaction of all claims and demands held against them by plaintiffs, and contended that this was evidenced by a receipt, of which the following is a copy: "Rebate on 16 cars at $5.00, as per agreement and in full payment of all claims to date of whatever nature [then followed the numbers of the cars], $80.00. Received of Fruit Growers Express $80.00 in full of above account. Ross & Barfield, Payee." If the contract was made as alleged, and as the jury found, then the payment of this rebate was absolutely due under its terms, and could have possibly constituted no consideration upon which to base the plea of an accord and satisfaction of the damages claimed in this suit. Hence it follows that the person signing the receipt above quoted was not estopped from afterwards asserting the demand made by this action, nor was it incumbent upon him, before so doing, to refund the money received upon the claim as to which there was no dispute. It appears from the testimony that, in response to a message he had received, Ross, representing the firm of Ross & Barfield, and also representing Ross & Kellar, presented to the agent of defendants a statement of a claim by each of the firms to rebates due on cars furnished them. Both of these were paid. Nothing occurred during the transaction that had any reference whatever to the claim for damages involved in this suit. In fact Ross testified that he was under the impression at that time the railroad company was responsible for these damages, instead of the defendants. It seems he had not then consulted any one with reference to his rights and the parties really liable for the claim sued upon; and we think it is clearly inferable from the testimony that there was no effort whatever to compromise this claim when the receipt was given. In the motion for a new trial plaintiffs in error

except to the charge of the court which in effect instructs them that they should look to all the evidence in the case, and if they find that the plaintiffs did, for a valuable consideration, receipt against their claim against the defendants, then that would amount to an accord and satisfaction, and would bar them from any recovery. The court further charged that a receipt is only prima facie evidence of payment, and can be denied or explained by parol testimony. The court instructed the jury to look to the evidence and see what was the purpose, intention, and understanding of the parties when the receipt was given. The court further charged that if there was a contract entered into between plaintiffs and defendants, as charged in the declaration, and if there was a breach thereof, resulting in loss and liability on the part of defendants, and if the jury found further that the defendants did owe the plaintiffs certain rebates for cars used during the shipping season, and if defendants simply paid to plaintiffs the amount of that rebate, that the jury thought was justly due them, then such payment would not be a consideration for the release of the defendants from any liability resulting from a breach of the contract declared upon, if the jury believed that such breach and loss had occurred as alleged. In the light of the testimony in this case, there was manifestly no error in the charge of the court given upon this subject. Civil Code, §§ 3732-3734; *Carlton* v. *R. R. Co.*, 81 *Ga.* 531 (3). The receipt of Ross & Kellar, using the same words as contained in plaintiffs' receipt, was admitted in evidence over objection of defendant's counsel because immaterial. Even if not admissible, it could have worked no injury to defendants; as the evidence demanded a finding of no accord and satisfaction.

8. In several grounds of the motion for a new trial exceptions are taken to charges of the court to the effect that if the jury found from the evidence that the agent of defendants was empowered to make contracts with shippers for the shipment of fruits, and for the supplying of those shippers with refrigerator cars, third persons dealing with such agent would not be bound to take notice of any limitations upon such an agent's authority as to whether he had to make these contracts in writing or in parol, unless a knowledge of such limitations or in-

structions given such agent was brought home to the third party. These instructions of the court are founded upon the principle embodied in the Civil Code, § 3023, which declares: "Private instructions or limitations not known to persons dealing with a general agent can not affect them." The evidence discloses that King was the agent of defendants for the purpose of making contracts to furnish refrigerator cars to people within a certain section of the State, who desired to ship fruit. King's headquarters were in Marshallville, Ga., and his territory included the station of Massey's Lane, on the Southwestern Railroad, from which plaintiffs' peaches were shipped. He had power to make contracts to furnish cars to any number of shippers residing within this territory. Whatever contract was made in this case was entered into between this agent and Ross, representing the firm of Ross & Barfield, and no direct transaction whatever was had between these shippers and the defendants in Chicago, who owned the cars. We think the uncontradicted evidence in the case tends to show that King occupied the position of a general agent in this transaction. It is not pretended that the contract made between these parties was of a nature required by law to be in writing. King did testify that he did not have authority to make a parol contract, but that the restriction required of him by his principal was to make such contracts in writing; and it is insisted by counsel for plaintiffs in error that inasmuch as Ross had entered into a written contract for Ross & Kellar, it was sufficient to put him on notice that the agent did not have authority to make parol contracts. But he went to the agent for the purpose of obtaining a written contract, and was by him given to understand that a verbal contract would be just as binding as the written agreement he had already entered into with the firm of Ross & Kellar. We do not think, therefore, that any secret instruction to the agent in this matter not to enter into parol agreements was binding upon a party dealing with the agent upon the faith of his representations. Besides this, it appears from the testimony in the record that this agent knew that Ross & Barfield were relying on him to furnish cars for the shipment of their peaches; and it appears from the uncontradicted testimony that the agent commenced to

furnish these cars, not only for Ross & Kellar, but also for Ross & Barfield, several days before the alleged breach of their contract commenced, and furnished all that were required prior to July 19th. As above stated, it further appeared in the evidence that the defendants had a subagent at the station where the goods of these two firms were stored for shipment in the same packing-house, who was also agent for the Central R. R. at that station, that it was the custom of plaintiffs to notify him what cars were needed, and that this subagent would often make suggestions as to how many cars they would need for such shipments. There is some conflict in the testimony on this point, as King testified that Ross would give such notice himself in person. But this is immaterial, as it does not seem to be disputed that King received demand for cars in accordance with the terms of the contract. Nor does he deny the fact that he received such demand for the cars that failed to be forthcoming on the 19th and 20th of July. The reason he gave for not furnishing the requisite number of cars during the dates mentioned was that he did not have them at his command. After the 23d of July the agent continued to supply refrigerator cars, as they were demanded, until the end of the season. Upon the faith of this contract the plaintiffs relied, and undertook to supply themselves with cars from no other source. In fact the general agent testified that he knew the plaintiffs were using the cars he had furnished, as well as the other firm of Ross & Kellar.

9. There are numerous other grounds in the motion for a new trial, excepting to other portions of the charge not hereinbefore considered. We have considered these exceptions in connection with the entire charge of the court, and do not think there is sufficient merit in them to require any special notice. The charge as a whole fully and fairly submitted to the jury the law governing the main and material issues involved, and was authorized by the evidence introduced on the trial. While there is conflict in the testimony, we think there was sufficient evidence to support the finding of the jury, and, therefore, will not interfere with the discretion of the trial judge in overruling the motion for a new trial.

Judgment affirmed. All the Justices concurring.