the plaintiff in error, and the judgment will therefore be affirmed.

*Judgment affirmed.*

RICHARDS, J., concurs.

LLOYD, J., concurs in judgment.

STALTER & ESSEX COAL CO. *v.* PEOPLES ET AL., ADMRS.

(Decided December 8, 1927.)

*Mr. D. Curtis Reed* and *Mr. H. C. Allread,* for plaintiff in error.

*Mr. Hollis C. Johnston* and *Messrs Peoples & Peoples,* for defendants in error.

MIDDLETON, P. J. The defendants in error, lessors, instituted an action in the court of common pleas of this county to recover a minimum royalty claimed by them to be due from the coal company under the terms of a certain lease theretofore given to the company by said lessors. In their amended petition, the lessors claimed a minimum royalty for the year ending February 28, 1922, in the sum of $2,786.10, for the year ending February 28, 1923, in the sum of $3,487.90, for the year ending on the same day of 1924 the sum of $2,579.40, for the year ending on the same day of 1925 the sum of $3,386, and for the year ending on February 28, 1926, the sum of $3,600. The coal company, in its amended answer to this amended petition, admitted that under the lease aforesaid it was provided that a minimum of 36,000 tons of coal should be mined each year after the first year of the lease, and that it was to pay a royalty therefor of 10 cents per ton. It denied, however, that there was anything due the lessors under the lease, and further pleaded that on the 6th day of November, 1922, it paid the lessors the sum of $947.09 in full satisfaction and discharge of all their claims to that date. The amended answer further pleaded that during the years ending February 28, 1922, and February 28, 1923, it had mined and paid for a greater quantity of coal than that with which it was credited in the petition, and that on and after March 1, 1923, there was not sufficient room or space in the mine to enable it to employ a sufficient force to remove the minimum amount of coal provided for in said lease. The case in the common pleas was submitted to a jury, which returned a verdict for the lessors in the sum of $6,273.98, which it was stated

in the general verdict was for the years ending in 1922 and 1923, less royalties paid, amounting to $926.03. This proceeding is prosecuted to reverse the judgment which followed the verdict.

Three alleged errors are claimed: First, it is contended that there was an accord and satisfaction in discharge of all obligations of the company to the lessors on above mentioned date, November 6, 1922. The facts as disclosed by the record in respect to this alleged accord and satisfaction are substantially to the following effect:

Prior to said date there had been some effort made by the lessors to collect for the minimum royalties due, and for other obligations of the coal company. Just prior to said date there was a meeting held at Pomeroy, Ohio, by certain representatives of the coal company and the lessors, for the purpose of adjusting these various claims. What was then said and discussed by the parties is in dispute, but it is shown that under date of November 6, 1922, the coal company sent to the lessors a check for the sum of $947.09. On the back of the check was this indorsement:

"For 7,055.70 tons mined from West & Matheny at .02 .......................... $141 11
10,299 tons mined from mine No. 8 ........ 205 98
Settlement of alleged claim against Philadelphia & Cleveland Coal Company for use of land for building and tipple ...... 600 00

"Total ........................... $947 09
"This voucher is tendered in full settlement of all claims and demands to date."

This check was subsequently cashed by the lessors,

after one of them had placed thereon this indorsement:

"Except that it settles no claim nor demand whatever for minimum royalties unpaid or damages arising from mining coal or from using Stalter & Essex mine No. 1 in any way in violation of the terms of the lease under which they are operating. They are also to continue paying two cents per ton for coal mined at mine No. 8."

The jury, in answer to a special interrogatory, found that this indorsement by the lessors was made without the knowledge or consent of the coal company.

It is contended that the acceptance of this check was an acceptance of all conditions placed thereon, and that it constituted an accord and satisfaction in discharge of all claims against the company. It is urged that the case of *Seeds Grain & Hay Co.* v. *Conger,* 83 Ohio St., 169, 93 N. E., 892, 32 L. R. A. (N. S.), 380, definitely settles this contention in favor of the company. The record, however, shows facts very materially different from the transaction involved in that case. Here we have the contention of the lessors, supported by evidence, that the question of the amount due for the minimum royalties was not discussed nor referred to in the conference held at Pomeroy, and that such claim never was disputed and was not a matter of controversy between the parties. Furthermore, the claim for minimum royalties was in a sense a liquidated demand, because the amount of said claim was fixed by the provisions of the lease at $3,600 per year, from which should be subtracted the amount of royalty paid on coal actually mined at the stipulated price of 10 cents

per ton. The amount therefore due for minimum royalties was a matter only of mathematical calculation. Moreover, the check itself purports to and does specify the various items for which payment is made. Under these circumstances, which were in evidence before the jury, we are not convinced that as a matter of law the acceptance of the check was or is conclusive as an accord and satisfaction against the lessors. We think that it was a question for the jury under the evidence to determine whether the acceptance of said check constituted an accord and satisfaction. It was certainly, under all the facts as disclosed by the evidence, a question for the jury to decide whether the check was drawn with a view of settling all the claims for royalty, as well as those specified on the check, or whether it was drawn for the purpose of settling only the claims specified for the amounts specified, and no other claims. It is manifest from the evidence, and the indorsement made by the lessors on the check conclusively shows, that lessors did not intend to accept it in settlement of the claims for royalty. Moreover, it is impossible to believe under the facts that the lessors would be so indifferent to their interests as to release their right to a claim of several thousand dollars, which was substantially a liquidated demand, and accept less than a thousand dollars in payment of claims other than the claim in question in full payment of all claims. It must be remembered, too, in this connection, that the claim for a minimum royalty arose out of the operation of what was known as mine No. 1, and that such claim was in no way connected with the claims specified on the check and for which payment was thereby made.

It has been repeatedly held that payment of a liquidated demand received in full of all claims will not discharge liability for then existing unliquidated demands. In the case of *Seattle, R. & S. Ry. Co.* v. *Seattle Tacoma Power Co.*, 63 Wash., 639, 116 P., 289, it is said by Morris, J., speaking for the court:

"It may be safely asserted that, underlying all application of the rule of accord and satisfaction, in cases of both liquidated and unliquidated accounts, where the creditor is absolutely and in any event entitled to receive a definite and fixed sum, but claims an additional sum to be his due, which additional sum only is disputed by the debtor, the payment by the debtor of the definite and fixed debt and its acceptance by the creditor, though tendered as payment in full, will not constitute an accord and satisfaction."

The court then cites many authorities in support of the principle so announced.

This rule rests upon the doctrine that the debtor has paid only that which he was bound to pay in any event, and that there was no consideration to support the discharge of the unliquidated claim. We have in the instant case the converse of conditions under which the above rule is applied. Here it is claimed the unliquidated demands were paid in full settlement, not only of those claims, but also of a liquidated claim. We see no reason why the rule will not apply to such converse conditions when the amount paid to discharge the unliquidated demands is far less than the amount due on the liquidated claims. As before observed, it is the contention of the lessors that on November 6, 1922, there had been, and then was, no dispute between the parties in re-

spect to the company's liability for minimum royalties growing out of the operation of mine No. 1 for the years ending in February, 1922, and February, 1923. The amount due for such royalties was merely a mathematical calculation, and the lessors' claim was not in dispute at the meeting at Pomeroy. It seems to us that under the facts as claimed by the lessors the payment of their unliquidated demands, amounting to far less than the amount due for minimum royalties, as determined by the jury, tendered to them in full payment of all demands, will not, if their contention is found to be true by the jury, sustain an accord and satisfaction for the reason that such accord and satisfaction lacks consideration to support it, or is supported by a consideration so wholly insufficient as to shock the conscience of a court and to amount to an actual fraud on the rights of the lessors. It is true that, in the instant case the coal company claimed nonliability for any minimum royalty during the time in question, because of the condition of the mine and the company's inability to use a sufficient force to mine the minimum requirement. But on this contention the jury found against the company, and by their verdict allowed the lessors the minimum royalty for the years named.

In the case of *Armour & Co.* v. *Ross & Barfield,* 110 Ga., 403, 35 S. E., 787, it is held in the seventh paragraph of the syllabus:

"If one who has two entirely distinct demands against another accepts payment of one and gives a receipt therefor, there being at the time no mention of the other, or any attempt whatever to settle or adjust it, a mere recital in the receipt that it is

'in full payment of all claims to date, of whatsoever nature,' is without consideration, so far as relates to the unsettled demand, and does not estop the person signing the receipt from afterwards asserting that demand, nor render it incumbent upon him, before so doing, to refund the money received upon the claim as to which there was no dispute.''

The facts upon which the above conclusion was reached by the court were to some extent different from the facts in the instant case, in that the claim paid may have been a liquidated demand. But the case is cited for the purpose of referring to the observations of the court made on the exceptions to the charge of the trial court. The court there said:

''In the motion for a new trial plaintiffs in error except to the charge of the court, which in effect instructs them that they should look to all the evidence in the case, and if they find that the plaintiffs did, for a valuable consideration, receipt against their claim against the defendants, then that would amount to an accord and satisfaction, and would bar them from any recovery. The court further charged that a receipt is only *prima facie* evidence of payment, and can be denied or explained by parol testimony. The court instructed the jury to look to the evidence, and see what was the purpose, intention, and understanding of the parties when the receipt was given. The court further charged that if there was a contract entered into between plaintiffs and defendants, as charged in the declaration, and if there was a breach thereof, resulting in loss and liability on the part of defendants, and if the jury found, further, that the defendants did owe the plaintiff certain rebates for cars used during the shipping season, and if defend-

ants simply paid to plaintiffs the amount of that rebate that the jury thought was justly due them, then such payment would not be a consideration for the release of the defendants from any liability resulting from a breach of the contract declared upon, if the jury believed that such breach and loss had occurred as alleged. In the light of the testimony in this case, there was manifestly no error in the charge of the court given upon this subject.''

In the instant case no charges were given which went directly to the matters in dispute in respect to the accord and satisfaction, but, notwithstanding that failure on the part of the trial court, the jury did determine such matters and by their verdict found substantially in favor of the lessors on the disputed questions entering into that issue.

It follows that, under the facts in evidence, we are not disposed to interfere with the conclusion reached by the jury on the claim of an accord and satisfaction. It is possible that some of the material facts in evidence may have escaped our attention, as the bill of exceptions is in a very confused state, and evidently had never been examined by counsel for either party before it was presented to this court.

It follows from what has been said that the special instruction given before argument, and which the company claims was nullified by the court in its general charge, was under the particular facts here prejudicial to the rights of the lessors. And, while we are not fully satisfied that the general charge was in conflict with the instruction so given, it would be wholly immaterial if the court subsequently did repudiate the special instruction.

The jury in its general verdict found that there

was due the lessors as minimum royalty for the periods ending in February, 1922, and February, 1923, the sum of $7,200, less royalties paid during said time, amounting to $926.03, leaving a balance due of $6,273.97, for which judgment was rendered. It appears from the record, and we think is undisputed, that during the time in question there was mined from mine No. 1 31,852 tons of coal, and that there was paid as royalty thereon, at the rate of 10 cents per ton, the sum of $3,185.20. The verdict of the jury, which for the time in question allowed a credit of only $926.03, was therefore not supported by sufficient evidence, and is manifestly wrong. We are of the opinion that there was therefore due the lessors when said verdict was rendered the sum of $4,015.80, instead of $6,273.97. It is therefore ordered that said judgment be modified by reducing the same to the sum of $4,015.80, with interest, and, as so modified, it will be affirmed. Costs in this court are ordered taxed against the defendants in error.

*Judgment modified and affirmed.*

MAUCK, J., concurs.