STUART G. SHEPARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 17132.   Promulgated February 27, 1929.

*Dean Acheson, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

628

OPINION.

LANSDON: Petitioner first assigns as error the Commissioner's act in disallowing two deductions claimed for the taxable year—one in the amount of $34,506.81, representing a loss sustained upon corpora-

tion stock which became worthless during that year, and the other for a debt of $1,920 ascertained to be worthless and charged off within the year.

In respect to the first mentioned loss, the evidence establishes the fact that prior to the year in question petitioner was the owner of capital stock of a corporation which was in the final stages of liquidation through proceedings in bankruptcy. On July 28, 1920, the final report of the trustee in bankruptcy was submitted to the referee for approval, which disclosed a complete disbursement of all of the funds of this bankrupt company except the sum of $7,503.61. The receiver in this report also submitted an itemized statement of certain unpaid preferred claims against the estate, together with court and administration costs, in aggregate amounts sufficient to exhaust the balance of funds remaining in his hands. This report was approved by the referee on said date, and the trustee ordered to pay all of the claims and costs listed therein, and to file his supplemental report at a later date, showing the disbursement of said balance in accordance therewith.

Since the disbursements so ordered, when made, would completely exhaust the bankrupt estate, it was apparent on July 28, 1920, that no money or property would thereafter remain for liquidation, even in part, of the capital stock of this company and that from and after said date such stock was without value. The information contained in the supplemental report of the trustee, made a year later, contained nothing by way of information to petitioner as to the value of his stock. He knew, being a director of the corporation, on the former date that his loss was inevitable and that the remaining function of the trustee consisted in the disbursement of the funds then in his hands, after which he, having made his report, would be discharged. Clearly this loss was sustained prior to the year 1921, and the Commissioner was correct in so determining. *Milton H. Bickley*, 1 B. T. A. 544; *N. P. Christensen*, 7 B. T. A. 625; *Harry H. DeLoss*, 6 B. T. A. 784; *Joslyn Manufacturing & Supply Co.*, 6 B. T. A. 749.

On the last claimed loss for a debt of $1,920, ascertained to be worthless and charged off during the taxable year, the evidence shows that this debt was evidenced by a promissory note given in 1907, and drawing interest at 6 per cent per annum. No interest was ever paid on this note and, aside from the expressed opinion of the petitioner, there is no evidence whatever upon which we can determine that it had any value at all on March 1, 1913. The fact that accumulated interest for more than six years remained unpaid at said date would be sufficient to destroy its marketability and render its actual value highly speculative and doubtful. It is also noted that the record fails to show any efforts made by the petitioner, worthy of

mention, to collect this note, although he states that in his opinion he at one time in 1917 might have collected it by suit and garnishment against the debtor's wages. His failure to make use of this effective remedy to prevent his loss, as well as his indulgent attitude generally, to this debtor, during the entire period following the making of the loan, is sufficient, we think, to preclude his right at this time to complain of the natural results of his carelessness and neglect. The Board has repeatedly held that deductions in such cases can only be claimed where the petitioner has shown his good faith by a conscientious effort to collect the debt through the usual means ordinarily employed. *C. S. Webb, Inc.*, 1 B. T. A. 269; *Egan & Hausman Co.*, 1 B. T. A. 556; *Steele Cotton Mill Co.*, 1 B. T. A. 299; *Alemite Die Casting & Mfg. Co.*, 1 B. T. A. 548; *Pacific Pipe & Supply Co.*, 2 B. T. A. 870; *T. J. Donahoe et al.*, 2 B. T. A. 355; *American Photo Player Co.*, 2 B. T. A. 419; *Williamson Milling Co.*, 5 B. T. A. 814; *Thomas J. Avery*, 5 B. T. A. 872; *H. B. Boyd*, 6 B. T. A. 1330. For these reasons, the action of the Commissioner in respect to this alleged error is sustained.

In support of petitioner's second and third assignments of error, he pleads the compromise made between himself and the Commissioner of Internal Revenue on January 5, 1925, and claims that this compromise settled not only all of his tax liability for the year 1921, but also liability for penalty assessments incurred through his failure to file his return within the time fixed by the statute, and that he is not now liable to be assessed in either respect for said year. The respondent contends that the settlement made between the petitioner and the Commissioner concluded only the specific item mentioned in the letter of January 5, 1925, and that the additional liabilities now asserted are not within its scope.

The evidence is silent as to the preliminary negotiations, if any, which preceded the submission by the taxpayer of his offer in compromise. Neither is the offer in the record. The Commissioner's letter of acceptance of this offer, dated January 5, 1925, however, acknowledges receipt of petitioner's deposit of $5 with the collector, which, he says, is in offer of compromise of his liability to the *ad valorem* penalty in the amount of $273.84 incurred by reason of his delinquency in filing his return for 1921. It also states that this offer is accepted in full settlement of the liability.

It is clear from this letter of acceptance, regardless as to how the Government's claim may have been previously characterized in notices to the petitioner, that the specific liability which the taxpayer offered to settle when he made his deposit with the collector was the *ad valorem* penalty he had incurred through failure to file his return for 1921 within the time fixed by law, and that it was so accepted by the Commissioner in settlement of this liability and no other.

Of necessity this must have been true, since no other controversy existed between the taxpayer and the Government at this time, and none other could have been in the minds of the parties as subject for compromise. It is a fundamental principle of the law of accord and satisfaction that no claim not in existence or disputed can form the basis of a compromise or settlement, neither will the settlement through compromise of a disputed part of a claim extinguish the liability for the part not in dispute. *Bostron* v. *Gibson*, 111 Ill. App. 457; *Manse* v. *Hossington*, 305 N. Y. 33; *Ryan* v. *Ward*, 48 N. Y. 204; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326; *Armour* v. *Ross*, 110 Ga. 403; *Siewing* v. *Tacke*, 112 Mo. App. 414; *Rogers* v. *Union Iron & Foundry Co.*, 167 Mo. App. 228. And such result is true even where a receipt is given reciting a release in full of all claims where only the disputed part is the subject of the settlement and nothing is paid on the undisputed balance, since, as to the latter, the yielding is all on the side of the creditor and there is no consideration to him for such release. See *Baldwin's Case*, 15 Ct. Cls. 297.

The petitioner contends, however, that the legal effect of the language of the Commissioner in his letter of acceptance is such as to extinguish all claims of the Government against him, whether present or future, of whatever kind or character that could arise out of his tax obligations for the year involved. He claims that a proper construction of the language of this letter leads to such conclusion and cites in support thereof the decision of the Court of Claims in the case of *Samuel Zemurray* v. *United States*, 64 Ct. Cls. 657. A cursory reading of the decision in the case cited might lead to the conclusion that it supported the contentions of petitioner, since the wording of the letter of acceptance in that case is similar to the language employed in the letter of acceptance in this case. A closer study of this decision in connection with the findings of fact, made by the court, and the negotiations which led up to the settlement between Zemurray and the Government, however, will show that, except in so far as each pertains to a penalty settlement, the two cases are in no way similar and said decision, except as hereinafter noted, has no application to the case at bar.

In the *Zemurray* case the taxpayer knowingly filed incorrect tax returns for the years 1917 and 1918, under such circumstances as would lay him liable to additional tax assessments and heavy penalties. This the taxpayer knew at the time of filing his return; but, for reasons of his own, he assumed the hazard and relied upon a chance of settlement before discovery. With this object in view he employed an attorney to come to Washington and take up with the Commissioner the adjustment of his entire tax liability for these years. The Commissioner referred the taxpayer's attorney to the collector of internal revenue at New Orleans where the original returns were filed. Amended returns were then prepared and filed with the col-

lector at New Orleans, which showed additional tax liability for these years. After the filing of these returns a conference was held between the collector, the taxpayer, his bookkeeper and the auditor who prepared the amended returns, after which the records were submitted to the Bureau of Internal Revenue at Washington for audit. The collector and taxpayer's attorney also came to Washington at this time, the object of the latter being to settle and adjust all matters of dispute existing between Zemurray and the Government in reference to taxes due for these years and penalties incurred by reason of the incorrect returns. To this end several conferences were held between taxpayer's attorney and officials of the Government between August 25 and September 3, 1919, during which both the tax and penalty liabilities were discussed and considered. In these discussions the attorney for Zemurray conceded the mathematical correctness of the Government's audit, but contended that the taxes should be settled on a personal-service basis rather than on an invested capital or special assessment basis. An agreement was finally reached at the conference of September 3, concerning which the court in its findings of fact says:

At this same conference it was agreed by Mr. Callan and other officials of the Internal Revenue Department that if the taxpayer would promptly pay the taxes due as shown by the audit made by the Government officials they would, subject to the approval of the Secretary of the Treasury, accept the sum of $150,000 in compromise of all civil and criminal liability for filing incorrect tax returns. This proposition was accepted by Mr. Montgomery, and then and there he delivered to the Treasury official three checks, one for $320,615.48 for 1917, one for $608,445.06 for 1918, and one for $150,000 for the penalty.

In order to make a record of the transactions two letters were written in the presence of Mr. Callan, one by Mr. Montgomery to Mr. Fauntleroy, collector of internal revenue, wherein he offered the sum of $150,000 in full settlement of the penalty on account of the incorrect returns, and one by Mr. Fauntleroy, collector, to Commissioner Daniel C. Roper, inclosing to Mr. Roper the letter written to him by Mr. Montgomery offering the sum of $150,000 in compromise and recommending that said offer in compromise be accepted.

An antedated demand from the collector at New Orleans to the taxpayer for the payment of additional taxes for 1917, in the sum of $320,615.48 and penalties of $150,000, was also prepared at this time and delivered to the attorney, together with a post-dated letter, as follows:

TREASURY DEPARTMENT,
*Washington, September 5, 1919.*

Hon. JOSEPH W. MONTGOMERY,
Attorney at Law, Hibernia Building,
New Orleans, Louisiana.

(Personal)

DEAR SIR:
Referring to the offer of $150,000 made by Samuel Zemurray, of New Orleans, Louisiana, in compromise of his civil and criminal liabilities incurred for filing

incorrect income-tax returns for 1917 and 1918, you are advised that with the approval of the Secretary of the Treasury I have accepted said offer, and the case is closed in the files of this office.

Respectfully,

DANIEL C. ROPER,
*Commissioner.*

On October 21, 1921, Zemurray attempted to reopen his account for these years and claim refund of part of the taxes paid, based upon Treasury Decision No. 3138, subsequently made, which seemed to recognize rights to the taxpayer that were unknown at the time of settlement. The Commissioner denied this claim for refund upon the ground that all tax obligations between the taxpayer and the Government for these years were completely closed and extinguished by the settlement made, as hereinbefore set forth.

It is obvious from the foregoing statement of facts in the *Zemurray* case that the tax for the years involved, as well as the *ad valorem* penalty, was the subject of negotiation and settlement there. It is true that the letter of acceptance of the offer in compromise, like the letter in the case at bar, mentions only the penalty item; however, unlike the case at bar, the record there supplies, by positive proof, the omission and shows that both items were included. That such was the conclusion of the court in the *Zemurray* case upon which it based its decision is shown by its specific reference thereto in said decision as follows:

The contention here is that there was never "a compromise" of the taxes but a compromise of the civil and criminal liabilities and therefore that the Commissioner's reason for his refusal is unfounded. We think it is true that the tax liability upon the basis of the income and excess profits of plaintiff was ascertained without deduction and the full amount of the taxes so determined was paid. But the amount of the taxes and the penalties to be accounted for were parts of one settlement. The liability for both was recognized. The plaintiff initiated this settlement and voluntarily paid the amount found due, suggesting no question as to his liability for the whole tax. It is not claimed that the amount of the taxes based upon the stated amount of income and excess profits was less than was agreed to be paid. In these circumstances we think there was a full settlement binding upon both parties whether it be called settlement or compromise unless it is to be held that the Treasury decisions mentioned gave a legal right to the plaintiff to make another and a subsequent return of one half of the income, and also gave his wife the right to make a separate return of the other half and thereby to open up the settlement voluntarily made two years before.

The foregoing analysis of the decision cited by the petitioner is sufficient, we think, to show that the facts upon which the Court of Claims based its decision in that case were similar to the facts under consideration here only in so far as they each pertain to the compromise and settlement of the *ad valorem* penalty liability, and no further. In that case, as pointed out by the court in its decision,

the direct issue as to the dual liability of the taxpayer, as to both penalty and tax, was raised. It was claimed by the taxpayer that, inasmuch as only the penalty liability was mentioned in the receipt, there was no settlement of the tax obligation; but the court held otherwise, basing it squarely upon the findings that both liabilities were considered together and both formed a part of the subject matter of the settlement. In the case at bar there was, admittedly, but the single item presented and considered, to wit, the assessment for the *ad valorem* penalty incurred by petitioner for the delayed filing of his income-tax return for the year in the sum of $273.84. The recital in the receipt to the effect that the settlement effected " closed the case," of course, referred to the case then under consideration, and not to a claim for taxes not then in contemplation. In view of the facts here presented, it is clear that the settlement of January 5, 1925, entirely closed the case against petitioner involving his further liability to assessment for any penalty incurred by reason of the delayed filing of his return for the year 1921, and that the respondent was without legal right to impose the penalty complained of in this appeal. The action of the respondent in this respect is, therefore, overruled. It is further obvious that the status of the petitioner with respect to his continuing liability to future assessment for taxes legally determined for 1921 was in no way affected by the settlement pleaded, and that the action of the respondent in respect to such assessment must be sustained.

Reviewed by the Board.

*Decision will be entered under Rule 50.*