### 51970. PIERSON et al. v. HERRINGTON.

Deen, Presiding Judge.

1. An accord and satisfaction may be made between contracting parties pro tanto. "[I]f the contract is of such a nature as to give rise to separate and distinct demands or to create a number of separate obligations and cross-obligations, and a number of distinct breaches as to these separate obligations occur, the parties may make an accord and satisfaction, or what in law amounts to an accord and satisfaction, as to one or more of these demands, without affecting the others." *National Duck Mills v. Catlin & Co.,* 10 Ga. App. 240 (2) (73 SE 418); *Cox v. Fairbanks Co.,* 29 Ga. App. 538 (4) (116 SE 43).

2. "A compromise or mutual accord and satisfaction is binding on both parties." Code § 20-1205. The execution of a new agreement will itself amount to a satisfaction only where expressly so agreed by the parties. Code § 20-1201. To render it binding there must be a meeting of the minds as to the subject matter embraced. *Mason Gin &c. Co. v. Piedmont Acid Delinting, Inc.,* 126 Ga. App. 298 (190 SE2d 604). In *Scott v. Imperial Hotel Co.,* 75 Ga. App. 91 (2) (42 SE2d 179) a check "in final settlement of every claim" was held subject to oral testimony as to the

understanding of the parties concerning the meaning of "every claim," so as to make the defense of accord and satisfaction a jury question. Where there is no agreement to settle all disputes arising from the contract a satisfaction does not result, although money is demanded and received. *Huger v. Cunningham,* 126 Ga. 684 (6) (56 SE 64); *Oglethorpe Park v. Mayor &c. of Savannah,* 101 Ga. App. 295 (2) (113 SE2d 645).

3. Where there is a genuine issue as to any material fact on which a conclusion must necessarily be based, neither party is entitled to summary judgment. *National Life Assur. Co. v. Massey-Ferguson Credit Corp.,* 136 Ga. App. 311, 316 (220 SE2d 793).

4. (a) The facts on which the defendant was granted a summary judgment in this case are substantially as follows: Plaintiffs Pierson (father and son) entered into a contract under which they agreed to furnish Herrington with sows which the latter would breed on his premises, to pay expenses of food and medicine, and to purchase the get when the piglets had reached a weight of 40 to 50 pounds at $5.50 per head. The contract provided for only two methods of termination: at the end of five years, or on six months notice by either party. It is not shown that such notice was given, nor had the contract period run its course, when a phasing out operation began. Eventually Herrington was left with 59 pregnant sows which he did not want to give up until the piglets had been born and reached a compensable weight. The Piersons came for the sows and, after much discussion with the sheriff, reached a conclusion that Pierson might take the sows on a payment of $18 per head ($3 for an estimated six future piglets each). This agreement was executed. Thereafter the Piersons sued Herrington for breaches of special contract provisions occurring prior to this settlement, including (a) failure to keep accurate records, (b) failure to maintain facilities and perform an efficient breeding program as required by paragraphs 4 and 6; (c) bringing in swine not belonging to the plaintiffs; (d) failing to make a specified delivery of gilts, and (e) either purchasing unnecessary feed or charging for feed not delivered.

(b) Under the above stated facts and the law applicable thereto, the trial court erred in granting the

defendant's motion for summary judgment. It is clear that this contract was terminated by agreement; that the settlement was not in accordance with either contractually specified method of termination, and that it settled all disputes concerning the possession of the stock and any future rights or obligations under the contract. Did the settlement also include all claims for damages for any breaches of the contract provisions occurring during the two and a half years it was in effect? Leroy Pierson's affidavit states that the agreement was only in connection with the release by defendant of affiant's breeding stock. At no time was it mentioned by either party that it constituted a complete and full settlement of the contract. The sheriff's affidavit states only that he asked the parties if they were "satisfied" and if the defendant was willing to let the plaintiffs take the sows, to which he received affirmative responses. Leroy Pierson's affidavit suggests a prior conversation regarding settlement of all claims, that this was the offer which he accepted, and that it was in fact executed.

A jury question remains as to whether the agreement to release the sows for a stated consideration included the settlement of all claims arising from prior alleged breaches of the contract. In considering the issue, of course, the jury would have a right to inquire into the understanding and intention of the parties at the time the agreement to release the sows was made, and in this connection to consider whether there was in fact any bona fide difference of opinion existing between them on performance of the contract terms. The true rule as to accord and satisfaction is still as stated in *Rivers v. Cole Corp.,* 209 Ga. 406 (73 SE2d 196): "When a creditor receives and retains a sum of money from his debtor less than the amount actually due him with the understanding, either express or implied, that it is received by him in satisfaction of his claim or demand, he cannot thereafter treat it as a nullity and recover the balance, and this is so whether his claim or demand be disputed or undisputed, liquidated or unliquidated."

The trial court erred in granting the defendant's motion for summary judgment.

*Judgment reversed. Quillian and Webb, JJ., concur.*

ARGUED APRIL 12, 1976 — DECIDED APRIL 23, 1976.

*Dubignion Douglas, Morris S. Robertson,* for appellants.
*Jones, Jones & Hilburn, Eric L. Jones,* for appellee.