## 55035. FIRST NATIONAL BANK OF GAINESVILLE v. APPALACHIAN INDUSTRIES, INC.

BANKE, Judge.

The appellee, Appalachian Industries, Inc., sued the appellant First National Bank of Gainesville, Georgia, to recover actual and punitive damages for breach of contract for First National's allegedly wrongful acceleration and collection of a loan. The trial judge decided several of the legal issues in the case in favor of Appalachian on motion for summary judgment, leaving

the actual determination of liability for jury trial. We granted First National's application for interlocutory appeal in order to assist in resolving the case with the utmost judicial economy.

The note, dated April 17, 1975, was for $925,000 and was secured by the grant of various security interests in real estate, inventory, equipment, and accounts receivable. It was repayable in monthly installments over a ten-year period. The acknowledged purpose of the loan was to enable Appalachian to meet certain payroll and trade debt obligations following a period of substantial operating losses.

Within a few months after the loan was made, First National became concerned over Appalachian's ability to weather its financial crisis. It communicated this concern to Appalachian, which agreed to liquidate two of its operating divisions and apply the proceeds to the note. Consequently, by early December of 1975, advance payments of approximately $250,000 had been made on the loan.

On December 18, 1975, First National served Appalachian with a written notice that it had accelerated the loan and that it intended to collect statutory attorney fees if the balance of $662,840 were not paid within ten days. Simultaneously, the bank offset Appalachian's checking account deposits against the accelerated indebtedness and began to retain all of the income from Appalachian's accounts receivable, which the bank had already begun to collect under the terms of the security agreement.

First National contends that it was authorized to declare a default and to accelerate the note for two reasons. First, because of a provision that the bank could declare a default in the event that the debtor "becomes insolvent or is unable to pay his debts as they mature . . ." and, second, because Appalachian missed a $12,700 installment which was due on December 17, 1975. Appalachian, on the other hand, contends that it was not insolvent and that the note was prepaid by almost $250,000 at the time of acceleration.

Error is enumerated on five of the trial court's rulings disposing of the parties' cross motions for

summary judgment.

1. The trial court correctly ruled that Appalachian's readily saleable assets and credit capacity were factors to be considered by the jury in determining whether the company was "insolvent or unable to pay its debts as they matured" so as to authorize acceleration, notwithstanding First National's contention that this determination should be based on "cash flow" alone. Inability to pay one's debts as they mature, the traditional equity test of insolvency, has often been interpreted to include an inquiry into the debtor's saleable assets or credit-worthiness as potential sources of payment. See United States v. Anderson, 119 F2d 343, 346 (7th Cir. 1941); In re Corcoran Irrigation District, 27 FSupp. 322 (S.D. Cal. 1939); Larrimer v. Feeney, 411 Pa. 604 (192 A2d 351, 353) (1963); 1 Collier on Bankruptcy, ¶ 1.19 (14th Ed. 1968), pp. 97-106. In the case before us now, the loan was made for the express purpose of allowing Appalachian to meet its operating expenses in the face of substantial operating losses. It would therefore be totally incongruous to construe the note as allowing a declaration of default based on a mere "cash flow" deficit. Furthermore, any ambiguity in the meaning of the term "insolvency" as used in the loan documents must be construed most strongly against First National since it prepared the documents. See, e.g., *Howkins v. Atlanta Baggage &c. Co.,* 107 Ga. App. 38 (1) (129 SE2d 158) (1962); *Pinkerton & Laws Co. v. Atlantis Realty Co.,* 128 Ga. App. 662 (3) (197 SE2d 749) (1973).

2. We also sustain the trial court's ruling that as a matter of law Appalachian's failure to make the $12,700 installment due on December 17, 1975, was not an act of default, since the loan had been prepaid by substantially more than that amount as of that date. First National's contention that a default did result is based on the rule that, in the absence of an agreement to the contrary, prepayments on a loan must first be applied to interest due and owing at the time they are made and then to principal. See generally Code § 57-109; *Massell Realty Co. v. Chamberlin,* 47 Ga. App. 718 (1) (171 SE 311) (1933). It argues that if the prepayments are applied in this fashion, then Appalachian would at least be in default for that

portion of the December 17 installment representing interest accruing from the date of the last prepayment until December 17. However, the loan in this case expressly provides that "Payment of any installment of principal *or interest* owing on this note may be made prior to the maturity date thereof without penalty." (Emphasis supplied.) Furthermore, to adopt the position advocated by First National would be to allow a lender to declare a default where a borrower made an installment payment one day early and failed to pay an additional one day's interest on the following day, when the installment actually fell due. We do not believe this to be a tenable result and, accordingly, we hold that the note in this case was not in default for nonpayment. See Bradford v. Thompson, 470 SW2d 633 (Tex. 1971); Los Angeles Invest. Co. v. Wilson, 181 Cal. 616 (185 P 853) (1919).

3. The trial court was also correct in ruling as a matter of law that First National had no right to set off the income from Appalachian's receivables against any portion of the indebtedness which had not yet matured. Although the security agreement authorized the bank to collect Appalachian's receivables "for application on the indebtedness hereby secured" and although Code Ann. § 109A-9—502 authorizes such an agreement, we do not construe the term "indebtedness" as used in that Code section to include the unmatured balance of the loan. Such a construction would effectively permit acceleration of the indebtedness without default and at the whim of the lender, at least to the extent of the receivables. This in turn would give the lender the power to deprive a company of its operating revenues at any time, without notice or explanation. Under the UCC, even a provision in a note allowing the lender to accelerate "at will" or "when he deems himself insecure" offers a debtor more protection than that, since such language is at least subject to requirements of good faith under Code Ann. § 109A-1—208. We accordingly hold that in the event the acceleration of the note is eventually determined to have been improper, then the bank was not authorized to retain any income from the accounts receivable in excess of the amount actually required to keep the installments current. See Code Ann. § 109A-9—502 (2).

4. We reverse the trial court's ruling that as a matter of law First National was not entitled to offset Appalachian's checking account deposits against the unmatured portion of the indebtedness. The "Business Checking Account Agreement" which Appalachian executed when it signed the signature card for its checking account contained the following provision: "The bank may charge any indebtedness of the depositor to the bank, *whether or not matured* against this account if the bank deems itself insecure with respect to any such indebtedness." (Emphasis supplied.) We know of no reason why this language should be held unenforceable. Although there are no Georgia authorities on point, the general rule in other jurisdictions is that such language is enforceable. See 10 AmJur2d 640, Banks, § 669; Bonhiver v. State Bank of Clearing, 29 Ill. App. 3d 794 (331 NE2d 390) (1975); Hudson United Bank v. House of Supreme, Inc., 149 N. J. Super. 153 (373 A2d 438) (1977); Farmers Cooperative Elevator, Inc., Duncombe v. State Bank, 236 NW2d 674 (Iowa 1975); United States ex rel. Crow Creek Sioux Tribe v. Tri-County Bank of Chamberlain, South Dakota, 415 FSupp. 858 (D. S. Dak. 1976). The provision is, of course, subject to the general requirement of good faith in its enforcement as set forth in the UCC. Code Ann. § 109A-1—203.

5. The trial court did not err in ruling there was no evidence that an accord and satisfaction had taken place with respect to Appalachian's claim and in granting summary judgment to Appalachian on this issue. First National asserted the defense of accord and satisfaction on the basis of an alleged agreement between the parties following the acceleration of the note, whereby First National agreed to waive statutory attorney fees in collecting the note and to make certain additional advances to Appalachian in return for Appalachian's cooperation in pursuing an orderly liquidation of its assets and a prompt payment of the indebtedness. First National contends that implied in this alleged agreement was a waiver by Appalachian of all claims against the bank arising out of the latter's acceleration and collection of the note.

We cannot agree. There is no indication in the record

that the parties intended to create a new agreement which would have had the effect of abrogating all rights, claims and liabilities under the loan note. Instead, it is clear that the only provision of the note affected was that dealing with the collection of attorney fees. "The execution of a new agreement will itself amount to a satisfaction only where expressly so agreed by the parties. Code § 20-1201. To render it binding there must be a meeting of the minds as to the subject matter embraced. [Cits.] . . . Where there is no agreement to settle all disputes arising from the contract a satisfaction does not result, although money is demanded and received. [Cits.]" *Pierson v. Herrington,* 138 Ga. App. 463 (2), 463-464 (226 SE2d 299) (1976). Although an express agreement to settle all disputes may in an appropriate case be inferred from the circumstances, it is clear from the record in this case that the subject of a release of claims by Appalachian was never discussed. Cf. *Swanson v. Chase,* 107 Ga. App. 295 (1) (d) (129 SE2d 873) (1963). The grant of summary judgment on this issue is accordingly affirmed.

*Judgment affirmed in part and reversed in part. Deen, P. J., and Smith, J., concur.*

ARGUED JANUARY 4, 1978 — DECIDED JUNE 20, 1978 — REHEARING DENIED JULY 13, 1978 —

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, William B. Gunter, Richard R. Cheatham, Robinson, Harben, Armstrong & Millikan, Emory F. Robinson, Frank W. Armstrong,* for appellant.

*Alston, Miller & Gaines, Sidney O. Smith, Jr., John M. Edwards, Jr.,* for appellee.

ON MOTION FOR REHEARING.

First National urges us to reconsider the case of *Wilder v. Federal Land Bank of Columbia,* 185 Ga. 837 (196 SE 708) (1924) on the issue of whether the pre-payments made on the loan relieved Appalachian of its duty to meet the December installment payment. In

*Wilder* a mortgage creditor applied certain fire insurance proceeds to the principal amount of the indebtedness *as authorized under the terms of a written assignment executed by the debtor.* The borrower was notified of the application and did not object. She made one subsequent installment payment and then became delinquent in payments of installments, taxes, and insurance. The lender attempted to foreclose under power of sale, and the borrower sought to enjoin the foreclosure by interposing a judgment setting apart the property as a year's support, which she had obtained in the meantime from the court of ordinary. The Supreme Court held: "In these circumstances the borrower will be deemed to have assented to application of the fund to principal, and can not complain thereof in law or equity after the fund has been so applied." *Wilder v. Federal Land Bank of Columbia,* supra, p. 839.

In this case, there are no circumstances indicating any agreement or assent by the debtor that the prepayments be applied solely to principal. Therefore, we have not deemed *Wilder* to be controlling on the issue.

*Motion for rehearing denied.*