## 56623. STATE FARM FIRE & CASUALTY COMPANY v. FORDHAM.

QUILLIAN, Presiding Judge.

This is an appeal from a judgment for plaintiff Fordham on a policy of fire insurance with defendant State Farm Fire & Casualty Company (State Farm). Plaintiff alleged that her house was totally destroyed by fire and sued for the sum of $17,643.28 "principal" and $2,400 in living expenses. The contract of insurance provided for $17,000 on the dwelling, $8,500 on personal property, and $3,400 for "additional living expense." State Farm set forth the defense of accord and satisfaction.

Mrs. Fordham and State Farm reached agreement on the amount due for the loss of personal property, leaving only the amounts due for the house and living expenses in issue.

Plaintiff Fordham contended the house was totally destroyed by the fire and submitted photographs of that portion that remained standing. Plaintiff also called a general contractor who testified that the house was a total loss and could not be repaired. He estimated the cost of rebuilding to be approximately $22,000. Lieutenant Wesley Weeks of the fire department was of the opinion that the house was a total loss. Mrs. Fordham itemized expenses incurred by her for living costs — which totaled $1,157.

State Farm contended the house was not a total loss but was reparable. They sent a "local contractor" that they had used "many times" to give them an estimate on Mrs. Fordham's house. The contractor, Mr. Hammonds, made three trips to Mrs. Fordham's house and estimated the cost of repairs at $15,273.56.

Mrs. Fordham testified that the State Farm agent told her after the contractor's first visit that her house could be rebuilt for $9,000 and she refused to accept that because "they couldn't build onto that burnt lumber." After the second trip by the contractor, she said she was offered $12,000 but again refused. She was called after the third visit and told that the construction cost "had gone up to $14,000." When she refused that offer she was asked to

attend a meeting in the State Farm agent's office.

When she arrived at State Farm's office she saw the holders of the two mortgages on her house were present. She testified, "my mortgages was up there, and they told me that they had to have their money." The State Farm agent "gave me the paper across the desk and I had to sign the paper before he would write the check to pay the mortgage off . . . He filled [the proof of loss] out, I guess, I didn't . . . [Q. Did he say, read this, it's a release or anything to that effect?] No. [Did he tell you that this is all you are going to get?] No . . . [Q. — were you told that you were to receive more money at a later date?] Yes . . . he told us that we, that they would give us 180 days to build the house back . . . I told him there was nothing to build to that we had a total loss . . . [Q... when you signed the paper that he stuck in there and made the cross mark and asked you to sign it, there was no mention of a final settlement?] No . . . [Q. — under what conditions did you talk with [Mr. Ed Bell, the State Farm agent]?] . . . Ed Bell told me, he says, I am on your side, he said, you will have to sign the papers to pay your mortgage off, said, thats the only way you can pay it off . . . I went back into Rex's [State Farm adjuster] and Mr. Matthew's [State Farm agent] office, Rex handed me the paper across the desk, he had it [sic] a cross mark marked on it, I signed it, and he jerked the paper back, he wrote the checks after I had signed the paper."

State Farm's evidence showed the plaintiff came to their office and executed a "proof of loss" statement. Her "rebuilding rights and the right to receive the deducted depreciation" were explained to her. That is, it was "the prerogative of the company to repair or replace" the house. They determined that the house was reparable so they did not pay the replacement value. Mr. Bell testified that the value of the house at the time the insurance was taken out was $17,000 and at the time of the fire "[t]he replacement cost would have been at least that." Since they determined the house was reparable at an estimate of $15,273.56, they deducted 20% from that amount, because "[i]t will be put back in a better condition in which it was to begin with prior to the fire . . ." The depreciated value of the house, the amount tendered to Mrs. Fordham "in compromise settlement of all claims under this

policy," was the sum of $12,336.72.

State Farm's witnesses testified that Mrs. Fordham was told of this procedure. They filled out the proof of loss, but did not "stick it in her face, say, sign it, and yank it away." She was asked to read it and asked if she had any questions. She did not read it, nor did she ask any questions. They did not pressure her in any way to sign the release. They pointed out that it was the mortgage holders who talked to Mrs. Fordham about why she should sign the proof of loss and the release.

The jury found for the plaintiff in the amount of $5,863.78. State Farm brings this appeal. *Held:*

1. State Farm enumerates as error, denial of their motion for directed verdict made at the conclusion of plaintiff's evidence and again at the end of defendant's evidence. One basis for such motion was an accord and satisfaction.

A compromise on a disputed amount of a claim, or mutual accord and satisfaction, is binding on both parties. Code Ann. § 20-1201 (Code § 20-1201); *Pierson v. Herrington,* 138 Ga. App. 463 (2) (226 SE2d 299). Plaintiff contended her house was a total loss. State Farm contended it was reparable and tendered an amount representing the cost of repairs, depreciated by 20%, because they alleged it would place the house in a better condition than it was when it was damaged by the fire. The "proof of Loss" form contained the statement, about half-way down the page: "Insured hereby claims of this company (*) and will accept from this Company in full release and satisfaction in compromise settlement of all claims under this policy the sum of . . . $12,336.72." Plaintiff's signature, witnessed by a State Farm employee, appears at the bottom.

State Farm contends that "where a person who can read signs a contract without apprising himself of the contents, other than by accepting representations of the opposite party or its agents, with whom there exists no fiduciary or confidential relationship, he is bound by the terms of the written contract, barring actual fraud which would prevent the person from reading the contract." See *Ansley v. Forest Services, Inc.,* 135 Ga. App. 745, 748 (218 SE2d 914). We agree.

No fiduciary or confidential relationship exists between an insured and the insurer and his agents. *Walsh v. Campbell,* 130 Ga. App. 194 (202 SE2d 657). The plaintiff does not contend that she can not read, she merely stated that the paper she signed was "jerked" away from her *after* she signed it. This is not such a reason as would legally excuse plaintiff from reading the contract *before* she signed it. It is not an unusual business practice for papers to be removed from a desk *after* they have been signed. This court cannot give effect to alleged parol provisions to a contract which clearly contravene the written provisions of the contract. Code Ann. § 38-501 (Code § 38-501). Parol evidence may be used to explain ambiguities, or aid in the construction of a contract, but it is clearly inadmissible to vary the terms of the written instrument. *Contractors Mgt. Corp. v. McDowell-Kelley, Inc.,* 136 Ga. App. 116 (4) (220 SE2d 473).

This court held in *Maxey-Bosshardt Lumber Co. v. Maxwell,* 127 Ga. App. 429, 431 (193 SE2d 885): "We recognize that the question of fraud is one which is normally for a jury to determine including whether there has been the required exercise of reasonable diligence to ascertain the truth. *Elliot v. Marshall,* 179 Ga. 639, 640 (176 SE 770). Nevertheless, the decisions have held that one can not close his eyes but must show some fraud perpetrated by the other party which actually prevented him from knowing the provisions of the contract. [Cits.] . . . When our Supreme Court in *B. E. Robuck, Inc. v. Walker,* 212 Ga. 621 (94 SE2d 696) reversed upon certiorari this court's holding . . . it stated that the case was controlled by the unanimous ruling in *Lewis v. Foy,* 189 Ga. 596 (6 SE 2d 788). It quoted with approval from page 601 . . . 'the law . . . demands of everyone that he make use of his own facilities to avoid being defrauded. No other rule could safely be adopted and enforced by the court with reference to written instruments. It is essential to all business relationships that the validity and solemnity of written contracts, freely and voluntarily executed, be upheld.' "

" 'Any representation, act, or artifice intended to deceive, and which does deceive another, is such a fraud as may authorize cancellation of a written contract; but a

party to a contract who can read must read or show a legal excuse for not doing so; and ordinarily, if fraud is the excuse, it must be such fraud as prevents the party from reading. Nor in such case will a mere fraudulent statement by the opposite party or his agent as to the contents of the writing furnish a legal excuse; . . .'" *Martin v. Alford,* 214 Ga. 4, 7 (102 SE2d 598). The plaintiff has shown no legal excuse for failing to read the release *before* signing.

2. If a debtor tenders a sum of money less than the amount claimed upon the condition, express or implied, *that it satisfied the entire debt,* and the creditor accepts the tender, an accord and satisfaction results. *Am. Associated Cos. v. Vaughan,* 213 Ga. 119, 120 (97 SE2d 144). The compromise, or mutual accord and satisfaction, is binding on both parties. Code Ann. § 20-1205 (Code § 20-1205). However, to make it binding, there must be a meeting of minds as to the subject matter embraced in the agreement. *Mason Gin &c. Co. v. Piedmont Acid Delinting, Inc.,* 126 Ga. App. 298, 300 (190 SE2d 604).

"An accord and satisfaction may be made between contracting parties pro tanto. '[I]f the contract is of such a nature as to give rise to separate and distinct demands or to create a number of separate obligations and cross-obligations, and a number of distinct breaches as to these separate obligations occur, the parties may make an accord and satisfaction, or what in law amounts to an accord and satisfaction, as to one or more of these demands, without affecting the others.' [Cits.]" *Pierson v. Herrington,* 138 Ga. App. 463 (1) (226 SE2d 299). In the instant case the plaintiff had two entirely distinct claims — one for the value of the house and the other for additional living expenses. Close scrutiny of the evidence as to the events surrounding this meeting reveal that only one claim was involved — the issue of repair or replacement of the house. No mention was made orally or in writing in the "proof of claim" for the amount claimed for additional living expenses. " '[T]here being at the time no mention of the other [claim] or any attempt whatever to settle or adjust it, a mere recital in the receipt that it is "in full payment of all claims to date of whatsoever nature" is without consideration so far as relates to the

unsettled demand, and does not estop the person signing the receipt from afterwards asserting that demand, nor render it incumbent upon him before so doing to refund the money received upon the claim as to which there was no dispute.' *Armour & Company v. Ross,* 110 Ga. 403 (7) (35 SE 787)." *Gilpin v. Swainsboro Ice &c. Co.,* 74 Ga. App. 813, 815 (41 SE2d 540); *Smith v. Cherokee Fertilizer Co.,* 24 Ga. App. 277 (1) (100 SE 719); *Cox v. Fairbanks Co.* 29 Ga. App. 538 (4) (116 SE 43).

The record does not show a meeting of the minds as to the claim not considered in the "Proof of Claim." The amount paid — $12,336.72, is shown as "The Actual Loss and Damage to the described property" minus the $100 deductible, and the 20% depreciation. Accordingly, as the burden of proof lies with the party asserting accord and satisfaction as a defense (*McCullough v. Mobiland, Inc.,* 139 Ga. App. 260 (228 SE2d 146)), and there was no showing of a meeting of the minds, or to include the plaintiff's claim for additional living expenses, there was no accord and satisfaction as to plaintiff's action for $2,400 for additional living expenses.

3. State Farm contends that if the plaintiff is seeking a rescission of the accord and satisfaction which was "in compromise settlement of all claims under this policy" they have failed in that they have not tendered back the payment received and having cashed the drafts and utilizing the proceeds, plaintiff is bound by the full release she signed. *Jossey v. Ga. S. & F. R. Co.,* 109 Ga. 439 (34 SE 664); *Townsend v. Lewis,* 122 Ga. App. 135 (176 SE2d 457).

This court has held that "[w]here the amount paid in accord and satisfaction is conceded to be due the plaintiff in any event, if the settlement is attacked for fraud, it is not necessary to tender back the amount paid." *Bankers Health &c. Ins. Co. v. Middleton,* 58 Ga. App. 715 (2) (199 SE 351). Accord, *Atlanta Life Ins. Co. v. Walker,* 53 Ga. App. 80, 84-85 (184 SE 776); *Sovereign Camp W.O.W. v. Ellis,* 59 Ga. App. 608 (2) (1 SE2d 677). State Farm did not contest the fact that the amount tendered by them and accepted by Mrs. Fordham was not due her. They established the amount it would cost to repair her house by their own expert. They depreciated it in an amount

they determined to be correct, and that is all they tendered — the amount they computed to be due her, and which they had no bona fide right to withhold — particularly when it was computed on repair rather than replacement, and their estimate of repair was almost $7,000 cheaper than Mrs. Fordham's expert, and was executed on a form which did not include any amount for "living expenses" which was covered by their contract of insurance. Under this procedure, there could have been no accord and satisfaction as to the entire amount claimed by Mrs. Fordham — only that amount claimed due for the house. *Matthews v. Gulf Life Ins. Co.,* 64 Ga. App. 112, 119 (12 SE2d 202).

Further, as stated in Division 2 above, where a claimant has two entirely distinct demands against the insurer — one for the house and the second for living expenses, " '[t]here being at the time no mention of the other or any attempt whatever to settle or adjust [the second claim in the proof of claim], a mere recital in the [proof of claim] that it is "in full payment of all claims to date of whatsoever nature" is without consideration so far as relates to the unsettled demand, and does not estop the person signing the receipt from afterwards asserting the demand, nor does it render it incumbent upon him before so doing to refund the money received upon the claim as to which there was no dispute.' *Armour & Company v. Ross,* 110 Ga. 403 (7) (35 SE 787)." *Gilpin v. Swainsboro Ice &c. Co.,* 74 Ga. App. 813, 815, supra. Thus, the claimant — Mrs. Fordham was not prevented from asserting her claim for "additional living expenses" as it was not included in the first settlement, and she was not required to tender back the amount received for settlement in the disputed claim on the damages to the house.

4. We therefore hold that an accord and satisfaction was reached as to the plaintiff's claim for damages to her house, but not as to her claim for "additional living expenses." Thus, while the evidence did not support the amount of the verdict returned, it did authorize a verdict for the plaintiff in some amount for "additional living expenses." The trial court did not err in denying defendant's motions for directed verdict as to the full amount. *Edgeman v. Thomas,* 132 Ga. App. 866 (2) (209

SE2d 658); *Talmadge v. Talmadge,* 241 Ga. 609 (2) (247 SE2d 61). Inasmuch as the jury verdict was not divided as to the amount awarded for each claim, the judgment must be reversed and a new trial granted as to the amount of damages for "additional living expenses."

*Judgment reversed; new trial granted in part. Webb and McMurray, JJ., concur.*

ARGUED SEPTEMBER 7, 1978 — DECIDED NOVEMBER 7, 1978.

*Beck, Goddard, Owen & Murray, Samuel A. Murray,* for appellant.

*Harry A. Crawley,* for appellee.