## 65381. BULMAN v. FIRST NATIONAL BANK OF CHATTOOGA COUNTY.

QUILLIAN, Presiding Judge.

The defendant appeals from the grant of plaintiff's motion for summary judgment. On September 7, 1978 the defendant executed and delivered to plaintiff a promissory note secured by a deed to secure debt, which note provided for payment in the principal amount of $63,132.00, together with interest at the rate of 9% per annum from date until paid in full, together with all costs of collection including 15% as attorney's fees if collected by law or through an attorney at law. The defendant failed to make any payments on the note and on January 7, 1980 the plaintiff notified the defendant by letter that defendant was in default and the plaintiff intended to enforce the provisions of the note with respect to attorney's fees as provided in Code Ann. § 20-506 (OCGA § 13-1-11) and further to foreclose the deed to secure debt and obtain a confirmation of the foreclosure in order to pursue the deficiency judgment if necessary. The foreclosure sale was had but confirmation of the sale was denied and the property ordered to be resold. Thereafter, on June 3, 1980 the plaintiff again notified the defendant that because of defendant's default the plaintiff demanded the principal plus the interest on the note and the defendant was further notified that unless the principal sum due as well as the interest was paid not later than ten days from receipt of this letter that the plaintiff intended to foreclose on the property and if necessary seek confirmation of the sale and to recover attorney's fees and court costs in addition to the principal and interest. The defendant failed to make payment on the note within the time prescribed and on July 1, 1980 foreclosure sale was had on the property. This sale was subsequently confirmed by the trial court. The property brought $58,200.00 on the sale and the total indebtedness including principal, interest, attorney's fees and costs of foreclosure as $84,565.28. Thus, the present suit was brought by the plaintiff to recover the deficiency.

The plaintiff moved for summary judgment and after a hearing at which pleadings and affidavits were considered by the trial judge the following judgment in favor of the plaintiff was entered. The sums involved were as follows: The principal due on the note was $63,132.00, the interest which had accrued up to that time was in the amount of $8,433.52, giving a balance owed on the note of $71,565.52. Fifteen percent of the amount owed as attorney's fees equaled $10,734.82. This gave a total of $82,300.34. The trial judge in his order deducted the amount of the sale, to wit, $58,200.00 from that sum to reach a principal amount of $24,100.34. He then computed interest

on the principal amount at the rate of 9% per annum from July 1, 1980 (the date of the sale) through June 21, 1982 (the date the judgment in favor of the plaintiff was entered). This resulted in a sum of $4,282.74 which when added to the principal equaled $28,383.08. From this sum the trial judge deducted a setoff, which the plaintiff conceded, in the sum of $1,750.00 and added to this sum interest at the rate of 7% per annum from March 3, 1980 (the date of the first foreclosure sale which was not confirmed) through June 21, 1982 and arrived at a total of $2,035.94 which was subtracted from the $28,383.08 to reach a total amount owed by the defendant to the plaintiff in the sum of $26,347.14.

The defendant appeals from that judgment and enumerates as error the trial judge's imposition of interest on the 15% attorney's fees which were included in the principal balance owed by the defendant to the plaintiff. The defendant contends that interest could not be charged on attorney's fees and that such sum should be deducted from the judgment and the recomputed amount would be the proper amount owed by the defendant to the plaintiff. *Held:*

One of the early Supreme Court decisions dealing with the imposition of attorney's fees for failure to timely pay a note stated that such attorney's fees became a part of the principal and that interest could be charged upon attorney's fees. *Baxter v. Bates,* 69 Ga. 587. That case was decided in 1882 and since that time the law regarding the inclusion of a provision imposing attorney's fees in a note has undergone considerable metamorphosis. For a thorough discussion of the history of the notice provision see *General Elec. Credit Corp. v. Brooks,* 242 Ga. 109 (249 SE2d 596). See also *DeLamater v. Martin,* 117 Ga. 139 (43 SE 459). Our present law regarding attorney's fees was enacted in 1953 and reads as follows: "Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable, and collectible as a part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity, subject to the following provisions: (a) If such note or other evidence of indebtedness provides for attorney's fees in some specific per cent. of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 per cent. of the principal and interest owing on said note or other evidence of indebtedness." Code Ann. § 20-506 (OCGA § 13-1-11). In *Woods v. State,* 109 Ga. App. 225, 227-28 (136 SE2d 18) this court considered Code Ann. § 20-506 and determined that the obligation regarding attorney's fees was perfected at the expiration of ten days from service of the notice under Code Ann. § 20-506.

Code Ann. § 57-110 (OCGA § 7-4-15) provides: "All liquidated demands, whereby agreement or otherwise the sum to be paid is fixed or certain, bear interest from the time the party shall become liable and bound to pay them. . . ." Certainly, at the time of the sale of the property the obligation to pay attorney's fees to the plaintiff had become fixed and certain. Therefore, from that time forward interest on such sum began to run. However, there was no provision in the contract nor in our law that the interest rate would be 9% per year. Instead, since there was no provision as to the percentum per annum, the interest on the liquidated sum would be the legal rate as provided in Code Ann. § 57-101 (now OCGA § 7-4-2), which as of 1980 would have been 7% per annum.

Hence, it was the error of the trial court to impose the interest rate of 9% per annum on the unpaid attorney's fees. Instead the trial court should have separated the unpaid attorney's fees from the other amount and computed interest on the unpaid attorney's fees at the rate of 7% per annum from July 1, 1980 to June 21, 1982.

The case must therefore be reversed with the direction that the trial court vacate the judgment and recompute the interest on attorney's fees in conformity with the dictates of this opinion.

*Judgment reversed with direction. Sognier and Pope, JJ., concur.*

DECIDED FEBRUARY 3, 1983 —
REHEARING DENIED MARCH 18, 1983.

*William J. Westbrook,* for appellant.
*William U. Hyden, Jr.,* for appellee.

On MOTION FOR REHEARING.

Movant/appellee urges that under the terms of the consumer collateral note it was entitled to apply the proceeds of the sale first to interest and attorney fees and lastly to principal so that the entire remaining sum of $24,100.34 (after deduction of $58,200.00 proceeds of sale) was principal against which interest at 9% could be charged.

OCGA § 7-4-17 (former Code § 57-109) provides: "When a payment is made upon any debt, it shall be applied first to the discharge of any interest due at the time, and the balance, if any, shall be applied to the reduction of the principal." Pindar points out that a party exercising a power of sale in a security deed "may apply the fund first to the costs of the sale, attorney's fees, and the interest and principal of the secured indebtedness." Pindar, Ga. Real Estate Law,

p. 833, § 21-88. There is, however, no statutory requirement that credit for proceeds must be applied to attorney fees first. Presumably this matter is one which may be contractually agreed to by the parties. See *Rice-Stix Dry Goods Co. v. Friedlander,* 30 Ga. App. 312 (117 SE 762) [affirmed in *Friedlander v. Rice-Stix Dry Goods Co.,* 158 Ga. 303 (122 SE 890)] which held that even OCGA § 7-4-17 (Code Ann. § 57-109) does not prohibit a creditor from applying payment on the principal first. Accord, *First Nat. Bank v. Appalachian Indus.,* 146 Ga. App. 630, 632 (247 SE2d 422) ["in the absence of an agreement to the contrary, prepayments on a loan must first be applied to interest . . ."]. See in this connection OCGA § 13-4-42 (former Code § 20-1006) as to appropriation of payments.

The note in question with regards to the application of the proceeds from a sale provides: "Any proceeds of any disposition of Collateral may be applied by the Holder to the payment of expenses in connection with the Collateral, including reasonable attorney fees and legal expenses, and any balance of such proceeds may be applied by the Holder toward the payment of such of the Liabilities, and in such order of application, as the Holder may from time to time elect." The deed to secure debt on which the note is based contains the following language: "The proceeds of the sale are to be applied first to said indebtedness and expenses of sale, and the remainder, if any, to the said first party."

We therefore find movant's argument to be subject to two salient objections. One, the security deed would apply proceeds first to the indebtedness which creates an apparent conflict with the terms of the note. Secondly, assuming that the proceeds could be applied first to attorney fees before the principal indebtedness, still the contract does not automatically so provide but requires affirmative action on the part of the holder of the note to elect to so apply such proceeds.

In support of the motion appellee has carefully set forth the credit from the proceeds of the sale, applied it first to interest, leaving a balance of credit which is next applied to attorney fees, and then the balance of credit is applied to the principal, leaving a sum owing. However, prior to this time in all its listings in the lower court this method was not used. Appellee's pleadings opted for a straight deduction of the proceeds from the total amount owed with no indication as to an election as to the order in which the proceeds would be applied. This is true both as to the action for confirmation of the sale and as to the present action to recover the deficit. Moreover, there is no evidence that appellee elected as to the application of the proceeds. We can not assume an election was made from a silent record.

*Rehearing denied.*