71569. WIGGINS v. DYER et al.
(344 SE2d 264)

Carley, Judge.

Plaintiff-appellant Meredith Louise Wiggins brought the instant suit to recover for injuries she received while a passenger in a Jeep that was owned by defendant-appellee James Michael Dyer and that was being operated by defendant-appellee Angile Dyer. Appellees were provided primary coverage for the Jeep by State Farm Mutual Automobile Insurance Company (State Farm) and excess coverage by Georgia Farm Bureau Mutual Insurance Company (GFB). Appellant and State Farm subsequently entered into an agreement evidenced by a written document. The document provided, in part, that in consideration for $9,975 paid by State Farm, appellant agreed that she had been "fully satisfied as to collecting any further sum from State Farm . . . and from State Farm's insured [appellees]" and that she would not "seek to collect any further sum as against State Farm . . . or from said [appellees] as individuals." Appellant further agreed that she would not "seek to pursue or prosecute by way of any further settlement, verdict, judgment and/or action any further claim for monies as against State Farm or [appellees]" but would have the right to "continue [her] pursuit of [the instant claim]" and that "in any continued pursuit of [the instant claim], that [appellant] shall only look to and make claim for any additional sums recovered against the aforementioned [GFB] policy."

Subsequent to the execution of this document by appellant and notwithstanding its language reserving to her the right to continued pursuit of the instant litigation, appellees moved for summary judgment, contending that the document served as a full release as to them. The trial court determined that the issue was controlled by

*Weems v. Freeman*, 234 Ga. 575 (216 SE2d 774) (1975) and that the document did constitute a full release of appellees. Accordingly, the trial court granted summary judgment in favor of appellees, from which order appellant now appeals.

1. As previously noted, the trial court primarily relied upon OCGA § 9-13-74 and its interpretation in *Weems v. Freeman*, supra, and its progeny. However, neither the Code section nor *Weems* is applicable to this case because here, we do not have joint tort-feasors or even successive tort-feasors. In the instant case, appellees are the *only* alleged tort-feasors and, if they have been released by virtue of the document, it is not for the reasons discussed in *Weems*, supra.

2. "In construing an instrument to determine whether it constitutes a release or a covenant not to sue, the intention of the parties is controlling. [Cit.] 'The fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties. This is the object of rules of interpretation, to discover the true intent of the parties, and in doing this we are to take *the whole* of [the instrument] together, and to consider this with the surrounding circumstances.' [Cits.]" (Emphasis supplied.) *Smallwood v. Bickers*, 139 Ga. App. 720, 723 (229 SE2d 525) (1976). "The touchstone of the rule is that in order to constitute a release there be a full satisfaction." *Smallwood v. Bickers*, supra at 724.

The appellant asserts that that instant document is unambiguous and clearly and unequivocally shows that there was no intention to release, waive or relinquish any right with regard to her claim except the right to recover from appellees *individually* and the right to assert any further claim against appellees' primary insurer, State Farm, while reserving the right to proceed against appellees only in their capacities as insureds under their excess liability policy. The agreement, when construed as a whole, clearly mandates such a construction of the language thereof. First, the agreement recites coverage by State Farm as being primary liability coverage and the coverage by Georgia Farm Bureau as being excess liability coverage. Paragraph 7 of the agreement provides that the appellant will not seek to collect "any further sum as against State Farm or its *insureds . . . either through State Farm's policy of insurance referred to above or from the said [appellees] as individuals.*" (Emphasis supplied.) Furthermore, paragraph 8 clearly states that appellant "will not seek to pursue or prosecute . . . any *further claim . . .* as against State Farm or *its insureds*" but "will, and have the right to, *continue [her] pursuit* of Civil Action No. S84-3-238, *Meredith Louise Wiggins v. Angile Dyer and Michael Dyer.*" (Emphasis supplied.) Paragraph 9 provides that appellant "shall only look to and make claim for any additional sums recovered against the aforementioned Georgia Farm Bureau pol-

icy number 601988, which is providing excess automobile liability insurance coverage as to the accident hereinabove described." Furthermore, throughout the agreement, the language which continually refers to the release and indemnity of appellees "individually" is tied directly to language which also refers to appellees as "insureds" of State Farm. There is no independent basis for asserting that the document purports to release appellees from liability in any of their *other* capacities save those two.

The review of the entire document indicates that the intent of the parties to settle with appellees as to State Farm's policy, and to exculpate appellees only as to their capacities as individuals and as "insureds" of State Farm, while continuing to pursue the tort claim to completion so as to have *an opportunity* to collect from the appellees as insureds of the excess carrier could not have been more clearly stated. This contractual language indicating the intention of the parties must be given force and effect unless there is some reason why the law renders it unenforceable. There is no such reason. This is, in effect, a pro tanto settlement as between the contracting parties. See *Pierson v. Herrington*, 138 Ga. App. 463 (1) (226 SE2d 299) (1976). "It is only where the loss sustained by the insured has been *completely satisfied* under policies of insurance with other companies that the question of the discharge of the non-participating insurer's obligation to the insured may arise, . . . ; and not, such as here, where the finding was authorized that the loss sustained . . . had not been completely satisfied by any prior settlement with another company." (Emphasis supplied.) *Newark Ins. Co. v. Smith*, 108 Ga. App. 839, 841-842 (135 SE2d 339) (1964).

Since the agreement represents a pro tanto settlement with appellees only as to State Farm's primary liability limits and as to any excess personal liability of appellees which was over and above their excess liability coverage, the agreement "could not affect the question of the liability of [GFB] to the insured under the insurance contract. [Cit.]" *Rutledge v. Dixie Auto. Ins. Co.*, 106 Ga. App. 577, 580 (127 SE2d 683) (1962). Compare *Orr v. Dairyland Ins. Co.*, 155 Ga. App. 899 (273 SE2d 630) (1980) wherein the release did not, as in this case, specifically reserve the right to continue to proceed against the defendant insofar as he was afforded coverage by other insurers. It is to be emphasized that GFB is not a party to this lawsuit, and neither is State Farm. The only issue is whether or not the document executed by appellant precludes her proceeding with this tort action against appellees. As set forth above, this question must be answered in the negative. Any rights of appellant to collect from the excess carrier any portion of any judgment later obtained must await such judgment and must be resolved in another proceeding in which the excess carrier is a party. For all of the above reasons, the trial court incorrectly

granted summary judgment to the appellees.

*Judgment reversed. Banke, C. J., McMurray, P. J., Pope, Benham, and Beasley, JJ., concur. Deen, P. J., Birdsong, P. J., and Sognier, J., dissent.*

SOGNIER, Judge, dissenting.

I respectfully dissent. Assuming, arguendo, that no ambiguities exist in the agreement executed by appellant and that the language clearly expressed the parties' intention to release appellees only in their capacities as State Farm insureds and as individuals but not as insureds of GFB, I cannot agree with the majority that the document before us is enforceable on its terms and therefore I would affirm the trial court's grant of summary judgment in favor of appellees.

The majority's opinion upholds an agreement whereby appellees, as individuals, have been divided into three distinct capacities with separate liability assigned to each capacity, as though appellees could function as three joint tortfeasors rolled into one. The agreement recites that appellant has received full satisfaction from appellees in their capacities as "State Farm insureds" and "as individuals," and that appellees in these two capacities are no longer parties to any suit or action brought by appellant and are not susceptible to the enforcement of any judgment obtained by appellant. The majority concludes that because appellant did not receive full satisfaction from appellees in their third capacity as GFB insureds, that the agreement is a "pro tanto" settlement allowing appellant the opportunity to pursue the instant tort suit to judgment against appellees in that third capacity.

Appellees in their capacity as GFB insureds do not exist in such a legal vacuum that a matter which affects appellees "as State Farm insureds" and "as individuals" has no repercussion on appellees "as insureds of GFB." Appellees exist in the capacity of "insureds of GFB" *only* to the extent that GFB may be contractually obligated to appellees under the insurance policy. However, when appellant released appellees as individuals, the natural and unavoidable consequence of that release was to cancel GFB's contractual obligation to shield its insureds' personal assets from liability. Thus, insofar as appellant's tort claim is concerned, appellees no longer exist in the third capacity "as insureds of GFB" and no party exists against whom appellant can continue the instant suit. The cases cited by the majority do not support a contrary conclusion but rather are all distinguishable by the fact that in each case, the plaintiffs were insureds who had *sustained a loss* for which they then sought full satisfaction from multiple insurers. Appellees have sustained no loss here and, under the terms of the agreement, never will sustain a loss so as to activate GFB's contractual obligations.

I cannot agree with the majority that we must give effect to the

intention of the parties to allow appellant to continue the instant suit. The fact that the parties to the agreement did not *intend* for their agreement to cancel GFB's contractual obligations under the policy is irrelevant and cannot serve as an excuse to disregard the legal effect the release has on those contractual obligations. Further, I cannot agree with the majority that the issue raised by this agreement need not be addressed until judgment may be rendered in favor of appellant and suit then filed against GFB for the policy proceeds. The issue whether the release of an "individual" insured concomitantly releases the insurer's obligation to shield from liability the personal assets of that insured is properly before this court now and in the interest of judicial economy and in fairness to the parties involved we should resolve it.

Therefore, because appellant's acknowledgement of full satisfaction from appellees as individuals obviated any obligation on GFB's part to shield appellees' assets from liability, appellees do not exist in any capacity which would authorize judgment to be rendered against them. Thus, I would affirm the trial court's grant of summary judgment in favor of appellees.

I am authorized to state that Presiding Judge Deen and Presiding Judge Birdsong join in this dissent.

DECIDED MARCH 20, 1986 —
REHEARING DENIED APRIL 3, 1986 — ▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

*Edmund A. Waller*, for appellant.
*John O. Bouwsma*, for appellees.